MANHATTAN REAL ESTATE CO. v. FITZ, County Treasurer.

(Supreme Court, Special Term, Suffolk County.   March 16, 1912.)

1. TAXATION (§ 434*)—ASSESSMENT—RETURN.

An assessment roll, under the heading "Description," contained the words, in four lines, "Map of Lindenhurst Square, Manhattan Realty Co.," and under the heading "Remarks, Name of Owner," the words "Manhattan Real Estate Co., 47 W. 34th St., N. Y." The "return" omitted the words "Map of," and read, in two lines, "Lindenhurst Square, Manhattan Realty Co.," omitting the name of the owner. *Held*, that the assessment was not invalid on the ground that the return was not a true transcript of the assessment roll; the words "Map of" not being essential.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 754–757; Dec. Dig. § 434.*]

2. TAXATION (§ 434*)—ASSESSMENT—RETURN.

The failure of the return to contain the name of the owner would not avoid a realty tax; Tax Law (Consol. Laws 1909, c. 60) § 30, providing that "the entry of the owner's name shall not affect the validity of the assessment."

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 754–757; Dec. Dig. § 434.*]

3. TAXATION (§ 412*)—ASSESSMENT.

Since the Tax Law (Consol. Laws 1909, c. 60) requires that the full valuation of property assessed shall be stated, the entry of the value of realty in the column "Total Valuation of Real and Personal Property," when there was no personal property, is deemed a substantial compliance with the statute, not being misleading.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 682–689; Dec. Dig. § 412.*]

4. TAXATION (§ 341*)—STATUTES.

Though the provision of the Tax Law (Consol. Laws 1909, c. 60) controlling as to Suffolk county, requiring the separate assessment of all lots or parts of a subdivided tract, by making such lot the unit of assessment, greatly increases the expense to the county and town, by making the expenses of publication greatly exceed the value of the tax, the law must be enforced as enacted.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 574–576; Dec. Dig. § 341.*]

5. CONSTITUTIONAL LAW (§ 229*)—TAXATION—INEQUALITIES.

Mere exemptions or inequalities in state taxation are not forbidden by the fourteenth amendment to the federal Constitution.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 685; Dec. Dig. § 229.*]

6. TAXATION (§ 47*)—DOUBLE TAXATION.

A taxpayer should be relieved of realty taxation, in so far as it amounts to double taxation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 104–114; Dec. Dig. § 47.*]

Action by the Manhattan Real Estate Company against Charles R. Fitz, County Treasurer, to enjoin a tax sale.   Complaint dismissed, except as stated.

Percy R. Housel, of Riverhead, for plaintiff.
T. M. Griffing, of Riverhead, for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

PUTNAM, J.  This is a suit in equity by a nonresident to enjoin a tax sale for the enforcement of the unpaid tax of 1910 upon lands in the town of Babylon.  The subject-matter is shown on a map entitled "Lindenhurst Square, Lindenhurst, L. I., Town of Babylon, the Property of Manhattan Real Estate Company, 429 6th Ave., N. Y. City," filed in Suffolk county clerk's office on March 16, 1907, as map No. 347.  The beginning of the assessment roll, in the column headed "Description," has the wording:

"Map of
Lindenhurst Square
Manhattan
Realty Co."

And in the last column, under heading "Remarks, Name of Owner":

"Manhattan Real Estate Co., 47 W. 34th St., N. Y."

The "return" corresponds to the above, except it omits the words "Map of," and reads, in *two* lines:

"Lindenhurst Square,
Manhattan Realty Co."

—and omits the name of the owner in the final column.

In the assessment roll the valuation is entered in a column headed "Total Valuation of Real Estate and Personal Property," instead of under a heading "Full Value," as given in section 30 of the Tax Law (Consol. Laws 1909, c. 60).

[1, 2] It is argued that this tax is invalid, because the return is not strictly "a true transcript" of the assessment roll.  The omission of the words "Map of" are not really essential; and the failure of the return to contain the name of the owner should not avoid it, when the Tax Law itself declares (section 30):

"But the entry of the name of the owner shall not affect the validity of the assessment."

[3] The statute requires that the full valuation shall be stated, and where there is no personal property involved such value, entered in the column "Total Valuation of Real and Personal Property," cannot mislead any one, and should be deemed a substantial compliance with the statute.

It is, however, proved that a part of the property set forth on the map of "Lindenhurst Square," etc., filed in the Suffolk county clerk's office in November, 1907, and which forms the basis of this assessment, is also comprised in a map entitled "Map of the City of Breslau, Suffolk County, N. Y., Made by R. B. Wheeler in 1879," and filed in November, 1879, and there assessed for taxes which have been returned unpaid, so that as to such part there has been a double assessment.

[4] Evidence has been introduced to show the burden of compliance with the provision of the Tax Law that requires the separate assessment of all lots or parts of a subdivided tract.  By making such lot the unit of assessment, the matter of expense to the county and town is greatly increased.  When such taxes are not paid, the expense

of publication may not only greatly exceed the amount of the tax, but runs up to a sum so disproportionate to the value that this initial advertising outlay by the county may never be repaid, or recovered against the property.

However, the terms of the Tax Law which require separate designation, and then distinct assessment of each lot in a subdivided tract, may be applied in other counties, its practical results in Suffolk county may often prove inconvenient, and even oppressive. Maps of extensive properties are filed, on which are laid out building lots, with streets and avenues all in futuro, in localities where as yet the land has but the value of farm or forest property. When this subdivision is completed, the lots are assessed at sums less than a dollar, while the few cents of tax, if unpaid, imposes on the county treasurer a duty of advertisement in which each lot must be separately described. Section 151, Tax Law.

Plaintiff's tract in this action consists of about 50 acres, which it subdivided, after it acquired title, into 652 lots, out of which plaintiff still has 459 lots. Most of the lots were taxed 8 cents each (though a few were 35 cents), so that the entire tax for 1910 on these 459 lots was $38.50, with $4.62 penalty and $4.73 interest. But, as the separate lots had to be advertised once a week for six weeks in two newspapers, the defendant, as county treasurer, has had to pay out for this publication and charges $369.60! It seems that, without considering interest, the advertising cost for separate lots is often more than ten times the amount of the tax.

Two tracts of equal area and value, lying together, are offered as illustrations. Plaintiff's, being thus subdivided, presents 459 separate parcels to be mentioned seriatim in the advertisement, which therefore costs $369.60. The other tract, whose entire acreage is described only by external boundaries, can be advertised as a single item, which costs but $3.80. It is argued that such a discrimination is not the equal protection guaranteed by the Constitution, and that a tax law which so requires should be declared void, as unequal, arbitrary, and oppressive.

The assessors, carrying out the law, make no discrimination, but act upon such evidence of separate ownership, or interest, as has been publicly recorded by the present or former owner of the property. The county treasurer merely follows the property as it has been assessed. The object of filing the map is to indicate separate interests and to facilitate distributive sales. By this means the present plaintiff appears to have sold out of this tract nearly 200 lots. The taxing officials cannot well inquire which developments are going forward, and which are merely on paper.

The assessors are bound to assess separately, in order that the incidence of the tax may fall justly, so that it may be paid by the one interested in that special parcel, which shall be followed by evidence that only the land affected has been cleared of the tax lien.

[5] As far as the federal Constitution is concerned, mere exemptions or inequalities in state taxation are not forbidden by the fourteenth amendment. Beers v. Glynn, 211 U. S. 477, 29 Sup. Ct. 186,

53 L. Ed. 290. Inequality in taxation is not itself a ground to substitute the judgment of a court for that of the Legislature. People v. Ronner, 185 N. Y. 285, 292, 77 N..E. 1061. Even if there were judicial power to supervise the legislative taxing laws, it would be difficult to pronounce against a statute that required assessment in separate parcels. The result in advertising the lands as they have been assessed is not only part of the natural administrative method of collection, but, in most instances, is essential to protect individual owners. In case of developments of a large tract into small separate holdings, separate taxation is necessary to avoid great hardship on the severed part interests.

The provisions to enforce unpaid taxes are not the same throughout the state. Such advertising in case of trivial amounts is avoided in Rockland county, where by special provision the county treasurer can wait until the arrears shall amount to $2. Section 150, Tax Law. A similar exception might well be enacted for Suffolk county. This, however, is for the wisdom of the Legislature. Even if the existing tax law lays a heavy burden on the delinquent taxpayer, and makes a draft upon the county treasury that the tax sales will not replace, still, as the law does not offend against the state Constitution, and does not contravene the federal Constitution, this local evil in Suffolk county cannot be remedied by the courts.

[6] Plaintiff, however, should be relieved as to those lots that have been assessed on the Lindenhurst map and again on the Breslau map, so far as its property has been subjected to double taxation; otherwise, the complaint is dismissed, and the temporary injunction vacated.