(174 App. Div. 122)

GAYNOR v. VILLAGE OF PORT CHESTER.

(Supreme Court, Appellate Division, Second Department. September 29, 1916.)

1. PLEADING ⬥216(1)—DEMURRER—SCOPE OF INQUIRY—FOREIGN MATTERS.
    In an action against a village for compensation for work performed under a contract to audit its receipt of taxes and assessments, to abstract all unpaid items, calculate the interest charges and penalties thereon, and to install an effective system of accounting, in consideration of a certain sum, with a cause of action for the reasonable value of the services performed, and for the reasonable value of additional work, etc., to which the defendant demurred, refusal to consider an adjudication in a taxpayer's action against the plaintiff and the defendant village to restrain payment under the contract that the contract was void was proper, since it would have imported foreign matter into the record before him.

    [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 535, 536, 539; Dec. Dig. ⬥216(1).]

2. STATUTES ⬥109—CONSTITUTIONAL PROVISIONS—TITLE AND "SUBJECT."
    Under Const. art. 3, § 16, providing that no private or local bill shall embrace more than one subject, which shall be expressed in the title, the title need not be an abstract of the act, disclose its details, or declare the modes of procedure by which the act is to be carried into effect; as the subject of an act is that concerning which it is enacted, and not the

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

substance of the act itself; and it is sufficient if the title fairly and rea-‌sonably discloses what the legislation concerns and indicates its purpose.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 136–139; Dec. Dig. ☞109.

For other definitions, see Words and Phrases, First and Second Series,‌ Subject.]

3. STATUTES ☞120(3)—TITLE AND SUBJECT—CONSTITUTIONAL PROVISIONS—MUNICIPAL CORPORATIONS.

Laws 1911, c. 513, entitled "An act to legalize the acts and proceedings of the board of trustees of the village of Port Chester in contracting for and authorizing the determination of the amount of unpaid taxes and assessments, and the establishment of an approved method of accounting, and legalizing the services performed thereunder, and authorize the board of trustees to make payment therefor, and an action to determine such amount," and in the body thereof, authorizing a recovery for loss sustained by the plaintiff from delay due to the failure of the board of trustees to obtain access for him to books in the tax receiver's office, and recovery for extra work directed by the president of the board of trustees, was beyond the title, which was narrowed to cover compensation for services, the words "or in connection therewith" referring to work done in connection with the contract by direction of the board of trustees, and hence violated Const. art. 3, § 16, declaring that no private or local bill shall embrace more than one subject expressed in its title.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 171; Dec. Dig. ☞120(3).]

4. STATUTES ☞64(10)—PARTIAL INVALIDITY—EFFECT.

Such invalid provisions were so unrelated to the title and to the other parts of the body of the act that the valid portions might be retained.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 58; Dec. Dig. ☞64(10).]

5. MUNICIPAL CORPORATIONS ☞227—CONTRACTS—VALIDATING ACT—POWER OF LEGISLATURE.

Laws 1911, c. 513, validating the proceedings of a village in contracting for the determination of the amount of unpaid taxes and assessments, and for the establishing of an approved method of accounting, and legalizing the services performed under such contract or in connection therewith, and authorizing the board of trustees to make payment therefor and the maintenance of an action to determine the amount, was within the legislative power. since as the Legislature might have enabled it, it could confirm it, even if the village had no power to make it.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 644; Dec. Dig. ☞227.]

6. MUNICIPAL CORPORATIONS ☞227—CONTRACTS—VALIDATING ACT—POWER OF COURT.

In such case, and after the validating act, the court was left with power to hear and determine the question of the fulfillment of the contract and the compensation therefor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 644; Dec. Dig. ☞227.]

7. STATUTES ☞21—ENACTMENT—TWO-THIRDS VOTE—CONSTITUTIONAL PROVISIONS.

Such act was not void because neither it nor the statute book showed that it was passed by a two-thirds vote, as Const. art. 3, § 20, requiring the assent of two-thirds of the members of each branch of the Legislature to

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

every bill appropriating public money or property for local or private purposes, had no application.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 18–27; Dec. Dig. ☞21.]

8. MUNICIPAL CORPORATIONS ☞871—INDEBTEDNESS—CONSTITUTIONAL PROVISIONS—"GIFT."

Such act did not violate Const. art. 8, § 10, providing that no village shall give any money or property or loan its money or credit to or in aid of any individual, or incur any indebtedness except for village purposes, since the plaintiff rendered valuable services under the contract of which the defendant village had availed itself, and since, under the validating act the plaintiff, if he recovered, would not receive a "gift," but something due him.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1817; Dec. Dig. ☞871.

For other definitions, see Words and Phrases, First and Second Series, Gift.]

Appeal from Special Term, Kings County.

Action by Philip B. Gaynor against the Village of Port Chester. From an order overruling its demurrer to the complaint, defendant appeals. Order modified and affirmed.

Argued before JENKS, P. J., and THOMAS, STAPLETON, MILLS, and PUTNAM, JJ.

Arthur R. Wilcox, of Port Chester (De Witt H. Lyon, of Port Chester, on the brief), for appellant.

Edward Hamilton Daly, of New York City (Joseph F. Daly, of New York City, of counsel), for respondent.

THOMAS, J. The questions arise on demurrer to the complaint. In June, 1909, pursuant to a resolution of its board of trustees, the president of the defendant village executed in its name a contract with plaintiff, whereby the latter agreed: (1) To make an audit of the receipt of all taxes and assessments in such village between named dates; (2) to abstract in book form all unpaid items thereof from 1881; (3) to calculate the interest, charges, and penalties on each unpaid item from May 1, 1896, to May 1, 1909; and (4) to devise and to install an effective system of accounting for all the various departments of the village, and to complete the work by October 1, 1909, in consideration of the sum of $6,000 to be paid by the defendant. The plaintiff, as alleged, duly performed the contract within the time fixed, or an extension of it, and the board of trustees on defendant's behalf accepted the abstract, and also the audit and accounting system, and the audit and abstract have since been used by defendant. On June 28, 1911, the Legislature passed "An act" (chapter 513 of the Laws of 1911) for the purpose of validating the contract, as well as for other purposes. Judgment for the compensation fixed by the contract is asked. The plaintiff in another cause of action would recover the reasonable value of the services rendered pursuant to the contract. For a second cause of action, the complaint in addition states that the defendant agreed to place at plaintiff's disposal all existing records of the defendant, but failed to do so in named particulars, which delayed plaintiff in the completion of his work to his damage in the sum

of $600. For a third cause of action plaintiff seeks to recover the sum of $550 as the reasonable value of additional work performed at defendant's request between June 28 and November 22, 1909, in calculating interest and penalties upon each unpaid item of said taxes and assessments from 1881 to May 1, 1896, which work was accepted by the trustees and has since been used by the defendant. The defendant demurred to each cause of action upon the ground that the facts stated are insufficient.

[1-3] The appellant asks the court to consider, as precluding recovery herein, the adjudication of this court in an action by Wakefield, a taxpayer of the defendant, against the defendant and the present plaintiff, to restrain payment under the contract, wherein, as asserted, it was decided (Wakefield v. Gaynor, 144 App. Div. 905, 128 N. Y. Supp. 1149, affirming the trial court, Wakefield v. Brophy, 67 Misc. Rep. 298, 122 N. Y. Supp. 632) that the contract was illegal and void and not made for a proper village purpose, which, after the passage of the act of the Legislature above mentioned, was affirmed by the Court of Appeals (Wakefield v. Gaynor, 207 N. Y. 772, 101 N. E. 1125). This court should not be set in motion to recall records in a former action, and to incorporate herein some findings of fact and conclusions of law. The defendant could have awaited the introduction of such matter on the trial, but preferred to stand upon the demurrer. The learned justice at Special Term was quite right in declining to import foreign matter into the record before him. I note, however, that in the Wakefield Case no opinion was written save at Special Term, where the learned justice based his conclusion solely upon the lack of power of the trustees to make the contract. Nevertheless, this court must consider whether the act of the Legislature was invalid: (1) On account of defective title; (2) for lack of legislative power to validate what the court must otherwise adjudge void; (3) for other reasons specified. The title is:

An act (1) to legalize the acts and proceedings of the board of trustees of the village of Port Chester in contracting for and authorizing (a) the determination of the amount of unpaid taxes and assessments and (b) for establishing and putting into effect improved methods of accounting for such village, (2) to legalize the services performed under such contract or in connection therewith, (3) to authorize the board of trustees to make payment therefor if able to agree upon the amount due, (4) and, otherwise, to authorize the maintenance of an action to determine such amount.

Consider the body of the act.

(1) All the acts and proceedings of the board of trustees are legalized in awarding a contract to Gaynor: (a) For auditing the books and accounts of such village for the purpose of disclosing the unpaid taxes and assessments; and (b) for improving the method of accounting pursuant to the resolution, etc.

(2) The execution of the contract of June 28, 1909, is legalized, and the amount of compensation as fixed by such contract is declared a legal and binding obligation of the village.

(3) Reasonable compensation for additional work in calculating interest and penalties as directed by the president of the board of trus-

tees and the corporation counsel are declared legal and binding obligations of the village.

(4) Loss sustained by plaintiff by reason of delay caused by failure of the board to obtain access for him to books in tax receiver's office is declared legal and binding obligation of village.

(5) The board of trustees is authorized to agree with plaintiff upon amount of compensation to be paid for additional work and for loss sustained.

(6) Compensation fixed by the contract and for additional work and loss shall be paid out of available funds of the village, or raised and paid by tax levy.

(7) Plaintiff, in case of disagreement with trustees or refusal by them to pay amount of contract and interest, may institute and maintain action against the village to recover compensation agreed by terms of contract, or the fair value of the work, labor, and services rendered and materials furnished, and reasonable compensation for additional work and loss sustained, with interest, as provided by section 1.

(8) Board shall levy tax to pay judgment.

It appears that the plaintiff is authorized to recover compensation fixed by the contract for the work it contemplates or the reasonable value in lieu thereof; also the value of extra labor done by direction of the president of the village and the corporation counsel, concerning which no cause of action purports to be stated, and also damages for delay caused him by the board of trustees. It does not appear in the act that it was the duty of the trustees to furnish such opportunity, although in the complaint it is alleged that they so agreed in the contract. I find nothing in the title that indicates legislation authorizing recovery of damages for such delinquency on the part of the trustees. The title of the act relates to services done under the employment of the trustees or in connection therewith, and not to losses sustained by a breach of the contract on the part of the trustees in failing to furnish access to books. The provisions authorizing recovery for extra work directed by the president of the board of trustees and the corporation counsel are not remotely suggested in the title, nor are they cognate to anything in it, unless it be the words "or in connection therewith." But I interpret such words to refer to work done in connection with the contract by direction of the board of trustees as alleged in the complaint, whether communicated through the president and corporation counsel or otherwise. The Constitution (article 3, § 16) is:

"No private or local bill * * * shall embrace more than one subject, and that shall be expressed in the title."

In Devlin v. Mayor, 63 N. Y. 9, 20, it is said:

"This provision of the fundamental law has been commended as an efficient and necessary preventive of the combination of different interests to enact a single law embracing several distinct matters of a local or private character, and to secure an intelligible and fair statement of the purposes and objects of a proposed law that both legislators and the public may understand and know the subject-matter of, and the general object to be effected by, proposed legislation. If the act and the title are so framed in relation to each other, and the objects expressed or indicated by the one and enacted by the

other, as fairly to give effect to this provision and prevent the evils in the mind of its framers, and intended to be remedied, the act will not be held invalid. It has repeatedly been said by different judges, and effect given to the declaration by the judgment of this court, that the title need not be an abstract of the act, disclose its details, or declare the machinery or modes of procedure by which the act is to be carried into effect, and its object accomplished. The subject of an act is that concerning which it is enacted, and not the substance of the act itself. The subject of an agreement is the thing which is the object of the agreement, as the subject of a discussion before, or enactment by, the Legislature is the thing which is the object under discussion or of the enactment, and not the result of the one or the other. If the title of an act fairly and reasonably discloses what the legislation concerns, or the matter with which it deals, and indicates its purpose, the constitutional requirement is complied with."

In Matter of the Application of the Mayor, etc., of the City of New York, 99 N. Y. 569, 577, 2 N. E. 642, 643, Judge Finch wrote:

"Where one, reading a proposed bill with the title in his mind, comes upon provisions which take him by surprise, which he could not reasonably have anticipated, and so both citizen and legislator are misled and thrown off their guard, it is our duty to declare the condemnation of the fundamental law. But where, as in the present case, no such evil lurks in the title, and the provisions criticized may be easily and reasonably grouped within the scope and range of the general subject expressed, we ought not to destroy the legislation assailed upon some nice and rigid criticism of forms of expression."

[4] It is one thing to validate a contract and to authorize compensation for services rendered pursuant to it, and quite another purpose to allow recovery of damages for failure of the trustees to expose its books, whereby the rendition of such services was delayed. It is also misleading to represent in the title that payment is asked for services rendered by the plaintiff pursuant to acts and proceedings of the board of trustees, and thereupon to enact that there shall be payment for services rendered at the direction of the president of the board of trustees and the corporation counsel. The title of an act can be made so broad as to cover details that have a very general relation to each other, but fall naturally under a common title. But in the present case the title was narrowed to cover compensation for services. One reading the restricted title would be surprised to find in the body of the act provision for recovering damages for failure of the local authorities to do something, and for compensation for services rendered at the instance of persons not indicated in the title and in whom there is not a semblance of authority. On account of such constriction of the title and overreaching of it in the body of the act, I regard the act too broad to fit the title.

But the invalid provisions are so unrelated to the title and the other parts of the body of the act that the valid portions may be retained. It is sufficient to cite Bohmer v. Haffen, 161 N. Y. 390, 55 N. E. 1047, which, through Matter of N. Y. & Long Island Bridge Co., 148 N. Y. 540, 42 N. E. 1088, leads to the decision on the subject in this state.

[5] Then comes the question of the power of the Legislature to validate a contract which the board of trustees had not power to make. Could the Legislature have enabled the trustees to make such contract? The services related to the presentation of the taxes and as-

sessments for a certain period, with an abstract of such as were unpaid, with interest, etc., and of a working system of accounting for the departments of the village. Whether it was necessary, convenient, or beneficial for the village that the work should be done might beget different opinions, but that the Legislature could deem it provident and direct it to be done is beyond doubt. If it could enable it, it could confirm it. It was, when done, illegal. But it became lawful when the Legislature declared that it should or could be done. In instances the Legislature has impliedly or expressly declared that the act to be done was for a public or municipal purpose, and the courts have decided that it was not such, but the court does not overrule the determination of the Legislature save in clear cases. People ex rel. Murphy v. Kelly, 76 N. Y. 475, 489. The Legislature sought to enable a village to lend its credit to a private water company, and the court decided that the purpose was private. Weismer v. Village of Douglas, 64 N. Y. 91, 99 (21 Am. Rep. 586). Judge Folger wrote:

"When we come to ask, in any case, what is a public purpose, the answer is not always ready, nor easily to be found. It is to be conceded that no pinched or meager sense may be put upon the words, and that if the purpose designated by the Legislature lies so near the border line as that it may be doubtful on which side of it it is domiciled, the courts may not set their judgment against that of the lawmakers."

I cannot conceive that the court would consider that it had judgment or power superior to that of the Legislature to decide what of an informative nature should be placed at the disposal of the local authorities of a village, or how it should be ascertained and embodied, or whether there should be a method of accounting adapted to the various branches of the municipality. And even if in the absence of initial power in the trustees the court should decide that the things attempted were beyond even the scope of the powers and purposes of the village, the Legislature would not be precluded thereafter from enlarging the compass of the powers of the village and the agencies through which it might act.

[6] Aptly cited is State of Pennsylvania v. Wheeling & Belmont Bridge Co., 59 U. S. (18 How.) 421, 15 L. Ed. 435, where the court had decided that a bridge obstructed the free navigation of a river, and that it should be abated, but the decision yielded to the later declaration of Congress that the bridge was a lawful structure. What was wrong became right by legal establishment. I am not considering a case where the court has decided that a contract was procured by fraud or was not performed, or where it decided some other question of fact that in law prevented recovery. If such question should be presented by the judgment in the taxpayer's action, it would be considered. The Legislature is not giving of defendant's property to the plaintiff in violation of article 8, § 10, of the Constitution. The plaintiff has delivered to the defendant something which its governing body deemed valuable and valued at a stated price, and which the defendant has taken and is using. The authorities had no right to contract for it, but the state has now confirmed them in what they did, and directed that the defendant's moral obligation to make pay-

ment shall become a legal duty. I perceive no difference in principle whether the village had bought and taken over a site for a schoolhouse, or a municipal building, or had, unauthorized, acquired a fire engine, and had defeated recovery of payment upon the ground that the contract was made without power and was void. But what, then, was wanting is now supplied, a sanction of the power exercised by the trustees. Now the Legislature has declared that what was done was an appropriate method of conducting the affairs of the municipality, and that the trustees are supplied with the power which then they did not have. The act, so far as its title contains its elements, goes no further. No defense available to the town is withdrawn, except that of the disability of the trustees. The compensation is legalized because the contract is validated, and it is declared an obligation of the town in so far as the contract is legalized. But the court is left with power to hear and determine the question of the fulfillment of the contract and the compensation therefor.

I perceive no distinction between this case and that of Wrought Iron Bridge Co. v. Town of Attica, 119 N. Y. 204, 23 N. E. 542, except that there the erection of a bridge was a manifest town purpose, which a court could not gainsay.

[7] It is further urged that the act appropriates public money for local and private purposes, and that it or the statute book does not show, as it should (People ex rel. Purdy v. Commissioners, 54 N. Y. 276, 13 Am. Rep. 581) that it was passed by a two-third vote, and that section 20, art. 3, of the Constitution is violated. The provision has no application. People ex rel. Eisman v. Ronner, 185 N. Y. 285, 77 N. E. 1061.

[8] It is also contended that the act violates Const. § 10, art. 8:

"No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, * * * nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes."

This brings the inquiry back to the point that the plaintiff has rendered valuable service, of which defendant has availed itself, and if the Legislature can validate the contract under which it was rendered, the plaintiff, if he recover a judgment and payment, will not receive a gift, but something due him.

The order, modified in accordance herewith, should be affirmed, without costs. All concur.