PHILIP B. GAYNOR, Appellant, v. VILLAGE OF PORT CHESTER, Respondent.

Municipal corporations — Port Chester (village of) — contract — employment by village authorities of certified public accountant to make audit of receipts of taxes — when such action may be ratified by statute enacted for that purpose — when judgment in taxpayer's action restraining village from paying expert not res adjudicata in this action — constitutional law — ratifying act not violative of State Constitution (Art. 3, § 20).

The trustees of defendant entered into a contract with plaintiff, a certified public accountant, to perform certain services with reference to an audit of its receipts from assessment and taxation at a stipulated price. When the work was near completion, a taxpayer's action was brought restraining payment to plaintiff on the ground of waste of public funds. Judgment in that action went against plaintiff on the grounds that there had been no money appropriated for the purpose, as required by the Village Law, and that under the charter of the village the trustees had no power to make such a contract. Thereafter the legislature passed an act (L. 1911, ch. 513), the purport of which was to legalize the action of the village trustees and authorize payment of plaintiff's claim, whereupon this action was brought to enforce such claim. The defense is that judgment in the former action is *res adjudicata* upon the proposition that plaintiff's work was not a village purpose, and that, therefore, the act referred to was unconstitutional under section 10 of article 8 of the State Constitution. *Held*, *first*, that the courts did not intend to determine that the work was not a village purpose or such as the legislature could not authorize; *second*, that the work was for a village purpose within the meaning of the Constitution. The village has received the benefit of it. Plaintiff has fully performed his contract and the legislature has now authorized and directed the village to pay him for the work done. The situation created a moral obligation which the legislature has power to meet. *Third*, that the legislative act is not violative of section 20, article 3 of the Constitution, as no public moneys of the state are appropriated within the meaning of that section.

*Gaynor* v. *Village of Port Chester*, 188 App. Div. 975, reversed.

(Argued December 8, 1920; decided December 31, 1920.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 27, 1919, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward S. Clinch* for appellant. Chapter 513 of the Laws of 1911 is constitutional. (*Guilford* v. *Chenango Co.*, 13 N. Y. 143; *Howell* v. *City of Buffalo*, 37 N. Y. 267; *Cole* v. *State*, 102 N. Y. 48; *Mayor, etc.*, v. *T. Nat. Bank*, 111 N. Y. 446; *O'Hara* v. *State*, 112 N. Y. 146; *N. J. Bridge Co.* v. *Town of Attica*, 119 N. Y. 204; *Cayuga Co.* v. *State*, 153 N. Y. 279; *United States* v. *Realty Co.*, 163 U. S. 443; *Foote* v. *Board of Missions*, 162 U. S. 439; *Jefferson City G. L. Co.* v. *Clark*, 95 U. S. 654.)

*Frederick W. Sherman* and *Arthur R. Wilcox* for respondent. The so-called enabling act (L. 1911, ch. 513) is unconstitutional. (*People ex rel.* v. *Murphy* v. *Kelly*, 76 N. Y. 489; *Matter of Townsend*, 39 N. Y. 174; *Weismer* v. *Village of Douglas*, 64 N. Y. 91; *Chapman* v. *Mayor, etc.*, 168 N. Y. 80; *Verplanck* v. *Van Buren*, 76 N. Y. 256; *City of Baltimore* v. *Horn*, 26 Md. 194; *Matter of Jensen*, 44 App. Div. 514; *Bush* v. *Bd. of Supervisors*, 159 N. Y. 212.)

CRANE, J. In June of 1909, pursuant to a resolution of its board of trustees, the president of the village of Port Chester executed in its name a contract with the plaintiff whereby the latter agreed (1) to make an audit of the receipts from all taxes and assessments from May 1st, 1896, to May 1st, 1909, a period of thirteen years, and to prepare an abstract in book form showing the arrears of

taxes and assessments for said period, giving complete data as shown by the records of various departments and officers of said village; (2) to prepare an abstract in book form of all arrears of taxes, assessments and sales for the same, prior to May 1st, 1896; (3) to devise and install an accounting system which shall be coordinated in the several departments; and provide for a control of the figures through general accounts which will in effect safeguard the finances of said village and provide a certain means of knowing the condition of the village affairs. The consideration for this work was to be $6,000. Philip B. Gaynor, the plaintiff, was a certified public accountant of admitted repute and ability.

In November of 1909 when Gaynor's work was near completion, William F. Wakefield, a taxpayer of said village, brought an action in the Supreme Court against the plaintiff and the officers of the village of Port Chester for an injunction restraining the village from carrying out said contract on the ground that it was illegal and unenforceable.

After a trial and on the 21st day of April, 1910, the court made its decision and gave judgment restraining the village authorities from paying Gaynor for his work or recognizing the contract on two grounds (1) that there had been no money appropriated for such a contract pursuant to section 128 of the Village Law, and (2) that under the charter of the village of Port Chester, the trustees had no express or implied power to make such a contract. (*Wakefield* v. *Brophy*, 67 Misc. Rep. 298; affd., 144 App. Div. 905; 207 N. Y. 772.)

Thereafter the legislature passed the following act, being chapter 513 of the Laws of 1911, which because of its importance to this case is here set out in full.

"An Act to legalize the acts and proceedings of the board of trustees of the village of Port Chester in contracting for and authorizing the determination of the amount of unpaid taxes and assessments and for establishing and putting into effect improved methods of accounting for such village, to legalize the services performed under such contract or in connection therewith, and to authorize the board of trustees to make payment therefor if able to .agree upon the amount due, and otherwise, to authorize the maintenance of an action to determine such amount.

" Became a law June 28, 1911, with the approval of the Governor.
Passed, three-fifths being present.

" *The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

"'SECTION 1. All the acts and proceedings of the board of trustees of the village of Port Chester in awarding a contract to Philip B. Gaynor for auditing the books and accounts of such village for the purpose of disclosing the unpaid taxes and assessments and improving the method of accounting pursuant to a resolution passed by the trustees on the twenty-first day of June, nineteen hundred and nine, and the execution of the contract between such village and the said Philip B. Gaynor, dated the twenty-eighth day of June, nineteen hundred and nine, are hereby legalized, ratified and confirmed, and the amount of compensation as fixed by such contract, together with reasonable compensation for additional work performed by the said Philip B. Gaynor in calculating interest and penalties, as directed by the president of the board of trustees and the corporation counsel of such village, and for loss sustained by him by reason of delay caused by failure of the board to obtain access for him to books in the tax receiver's office, are hereby declared legal and binding obligations of the village of Port Chester, and the board of trustees thereof is hereby authorized to agree

with the said Philip B. Gaynor upon the amount of compensation to be paid him for such additional work for the loss so sustained. The amount of compensation fixed by such contract, together with the amount agreed upon with the board of trustees as compensation for additional work and for loss sustained as herein provided, together with interest thereon from November twenty-second, nineteen hundred and nine, shall be paid out of any funds of the village available therefor, or if no such funds are available, the board of trustees shall cause the aggregate amount thereof to be included in the next tax levy, and raised in the same manner that other moneys are raised by taxation in such village, and when so raised shall pay the amount thereof to the said Philip B. Gaynor.

"§ 2. If the said Philip B. Gaynor and the board of trustees of such village are unable to agree upon the amount of compensation for additional work and for loss sustained, as provided by this act, or if the said board of trustees of such village refuse to pay the amount of the said contract and interest thereon from November twenty-second, nineteen hundred and nine, the said Philip B. Gaynor, his representatives or assigns, may institute and maintain in any court of competent jurisdiction an action against the village of Port Chester to recover the compensation agreed to be paid by the terms of such contract, or the fair value of the work, labor and services rendered and materials furnished by him, and reasonable compensation for the additional work and loss sustained, as provided by section one of this act, together with interest on the aggregate amount from November twenty-second, nineteen hundred and nine. Upon the recovery of a judgment in such action, the board of trustees of the village of Port Chester shall cause the amount of such judgment, with interest on the same from the time of the entry thereof, to be levied upon the taxable property of the village of Port Chester

and collected in the same manner as other village charges, and the amount when collected shall be paid over to the said Philip B. Gaynor, his representatives or assigns, on the delivery by him to the board of trustees of such village of a satisfaction of such judgment.

" § 3. This act shall take effect immediately."

This action was thereupon commenced by Gaynor, the plaintiff, setting forth four causes of action, the first cause of action being for the contract price of his work for the village of Port Chester legalized by this enabling act, the second for damages due to delay, the third for extra work, and the fourth on *quantum meruit.*

The Appellate Division of the second department (174 App. Div. 122) sustained a demurrer to the second and third causes of action on the ground that the above act of the legislature, in so far as it gave a remedy for these items, was illegal, as not sufficiently mentioning them in the title, but overruled the demurrer as to the first and fourth causes of action.

The defendant village thereupon answered the complaint and the trial proceeded upon the first cause of action. It is with this alone that we have to deal on this appeal.

The answer admitted that the plaintiff had duly performed all the conditions of the said contract on his part to be performed, and the trial judge so found. But it was contended with success below that the judgment in *Wakefield* v. *Gaynor* was *res adjudicata* upon the proposition that Gaynor's work was not a village purpose and that, therefore, the act above referred to was unconstitutional.

Section 10 of article VIII of the Constitution of the state of New York says: " No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, or become directly or indirectly

the owner of stock in, or bonds of, any association or corporation; nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes."

If chapter 513 of the Laws of 1911 did not apply the moneys of the village of Port Chester to a village purpose, or if the work which Gaynor did for the village was not to further its interests or attempt in good faith to make efficient and workable its system of taxation, then, of course, the act would be unconstitutional. It would seem as though the effect of the act could not be determined until after its enactment, but the Special Term and the Appellate Division have held otherwise. It is said by them that the *Wakefield* action found that Gaynor's work was not a village purpose; that the legislature was, therefore, barred from legalizing his claim as it could not within the terms of the Constitution make that a village purpose which the court had determined was not a village purpose.

We think the decision in the *Wakefield* case can have no such interpretation. In the first place chapter 513 of the Laws of 1911 could not have been in the minds of any of the parties or the trial judge, as the decision was made July 21st, 1910. The bringing of that action and trial of it proceeded upon the claim that the Gaynor contract was illegal under existing law. Nobody thought of subsequent legislation and the findings and decision must be interpreted. as applying to existing statutes and not to subsequent enactments. On this appeal we have the entire record in the *Wakefield* case before us as it is an exhibit in the case. The theory upon which it proceeded is readily gathered from that record. The plaintiff, Wakefield, showed that there was no money in the treasury of the village to meet such a contract and that no proposition authorizing the trustees to raise the money had been submitted to the voters as required by the Village Law. The court said:

" I understand that there is no fraud claimed or alleged in this case.

" Mr. Sherman: No, we claim waste of funds.

" The Court: Waste of funds that you claim is, that they are about to perform an illegal contract, is that right?

" Mr. Sherman: That is right."

The claim, therefore, of the plaintiff was, as stated by his counsel, that the funds of the village were to be wasted in payment of a contract which was illegal under the Village Law.

The trial judge found that there was no money to meet such a contract and that no proposition was ever adopted authorizing the board of trustees to raise money for such a purpose. The twenty-third finding of fact upon which all the stress has been laid reads as follows:

" 23d. That the contract or paper writing entered into between the defendant Gaynor and the defendants assuming to act for the Village of Port Chester, was not made and executed for a proper village purpose but was beyond the power and authority of the defendant trustees to make on behalf of the Village of Port Chester."

Taking the words " a proper village purpose " in connection with the claim of the plaintiff, the other findings of the trial judge and his opinion, it is evident that the meaning to be given them is that a contract not made or authorized according to law cannot be for a proper village purpose. Note will be taken of the word " proper." The judge does not find that the work of Gaynor was not for a village purpose. He finds that the contract was not for a *proper* village purpose, which means a *legalized* village purpose. It is quite clear to our minds the courts did not intend to· determine that the work which Gaynor did for the village was not a village purpose within the meaning of the Constitution or such as the legislature could not authorize.

The next question is to determine the constitutionality of chapter 513 of the Laws of 1911. This depends upon

whether the work which Gaynor did for the village of Port Chester creates such a moral obligation as permits the legislature to recognize it and direct its payment.

If the contract with Gaynor was for the good of the village which profited thereby and the parties acted in good faith believing that such work came within the law, a case exists which makes such an act as this constitutional. (*Munro* v. *State of New York,* 223 N. Y. 208, and cases cited on page 215; *Wrought Iron Bridge Co.* v. *Town of Attica,* 119 N. Y. 204.)

The good faith of all the parties is conceded.

On the trial of the *Wakefield* case counsel for the taxpayer-plaintiff stated as follows: "I do not think there was anything intentionally wrong done."

The testimony in behalf of the defendant trustees showed a condition of affairs regarding the tax and assessment books which required a very earnest overhauling and expert examination.

Although the law provided for periodical tax sales there had been none from 1896 down to 1908. Some of the records had been taken home by officials when their term of office had expired. Tax items upon the books were open as unpaid when in fact they had been paid. Some items were marked paid which could not be traced to any cash entry. Assessment sheets were missing and there was no uniform system for checking up receipts. One of the witnesses, a lawyer named Schupp, testified regarding tax searches as follows:

"He (the village clerk) did not have returns for all the years. Such returns as he did have were in bad condition, physically, and sheets were missing; they were torn and marked up with blue pencil and red ink, and the markings to a large degree meant nothing to one who examined them. * * * The receiver in sending out bills would note on the bills these arrears, if there were any, but when the tax was paid the receiver did not have possession of the old tax books and had no

way of crediting the payment of these arrears.  *  *  *
When I would make tax searches I found information
of unpaid taxes, and in many instances the owners
produced receipts for these taxes.  *  *  *  Did you
find these books in a condition in the fall of 1908 and
January and February, 1909, in a condition where a man
could make an accurate search within a reasonable time?

" A. I could not.

" Q. Can you at the present time?

" A. Yes, sir, I think so.  There is a book now prepared
by Mr. Gaynor which so far as my observation goes is
reliable."

Philip B. Gaynor, the public accountant, testified that
he found the books relating to the financial condition
of the village of Port Chester in a chaotic condition;
that the former clerks and former treasurers had carried
home with them whatever records they had made; and
that these were not, therefore, on the public files; some
of former Clerk Camp's reports of cash collected were
discovered in Duffy's grocery store.  Gaynor commenced
work on such books and records as could be found on
July 8th, 1909, and by the end of November with the
aid of five men including himself had made a tabulated
record of the taxes and assessments due and unpaid.
He also prepared a new accounting method.  It appears
from the testimony above quoted that one of his books
is now in use.  These reports and tabulations are very
complete and are annexed to the record on appeal as an
exhibit in the case.

This is but a brief statement of the work done by
Gaynor under his contract as gathered from the testimony
in the *Wakefield* case, but it is sufficient to show the
following cardinal facts.  The financial affairs of the
village of Port Chester were in a chaotic condition, with
records missing, taxes unpaid or improperly and inaccu-
rately entered.  No satisfactory system for keeping the
accounts was in use.  The trustees, acting in good faith

and for the interests of all the taxpayers, employed a public accountant to examine the books and records wherever obtainable and to report the taxes due and payable, together with a proper method of accounting. The work as done by the accountant is not challenged as being imperfect or incomplete.   It is found as a fact that the accountant fully performed all that he contracted to do.   His work with his assistants was not for himself or for any private purpose, but for the use and benefit of the village of Port Chester.

I know of no law which would prevent the legislature from authorizing a village or other municipality from employing a public accountant to examine its books in the same way as it authorizes lawyers to appear for the corporation in litigation.  A lawyer may be employed in special matters, although not the corporation counsel or regular attorney.   The work of the certified public accountant has to-day become a profession.   He is recognized by our statutes.   The certificate of certified public accountant may be issued by the regents of the university upon compliance with specified requirements.   (Gen. Business Law [Cons. Laws, ch. 20], art. VIII, § 80.)   It is common knowledge that he is employed frequently to examine the books and accounts of all kinds of corporations and enterprises.   Why should not municipalities have the benefit of such expert knowledge?   If the legislature should authorize the employment of a public accountant by a municipality I know of no reason why a court should declare that his work was not for a public use.

If the legislature could have authorized the employment of a public accountant to examine the financial conditions of Port Chester before the making of the Gaynor contract, what is to prevent its legalizing such acts performed in good faith for the public at a time when no such authority existed?

The work which Gaynor did was for a village purpose within the meaning of the Constitution.   The village has

received the benefit of it. He has fully performed his contract and the legislature has now authorized and directed the village to pay him for the work done. The situation created a moral obligation which the legislature has power to meet.

Neither is the act violative of section 20, article III of the Constitution, as no public moneys of the state are appropriated within the meaning of that section. (*People ex rel. Eisman* v. *Ronner,* 185 N. Y. 285; *People ex rel. Einsfeld* v. *Murray,* 4 App. Div. 185; 149 N. Y. 367.)

As all the facts in this case are conceded and the only question presented is the legality of chapter 513 of the Laws of 1911, we direct a reversal of the judgments below and the entry of judgment in favor of the plaintiff for the sum of $6,000 with interest thereon from January 8, 1910, with costs in all courts.

HISCOCK, Ch. J., CHASE, CARDOZO, POUND, McLAUGHLIN and ANDREWS, JJ., concur.

Judgment accordingly.