The People of the State of New York ex rel. Michael H. Eisman, Appellant, v. John H. J. Ronner, as Register of the County of New York, Respondent.

1. Constitutional Law — Validity of Mortgage Tax Law — Const. Art. 3, § 20. The statute (L. 1905, ch. 729) providing for the taxation of debts secured by mortgages, the proceeds of such tax to belong, one-half to the state and one-half to the particular locality in which the tax is collected, which was enacted by a majority vote of the legislature, does not, for that reason, violate the provisions of the Constitution (Const. art. 3, § 20) requiring the assent of two-thirds of the members elected to each branch of the legislature to every bill appropriating the public moneys for local or private purposes; the inhibition of the Constitution has reference to the public moneys of the state as distinguished from public revenues for taxes levied for local purposes, but does not apply to a statute the scheme of which is to raise revenue for the general government of the state and for the various local governments within the state by the apportionment of a tax laid upon a certain species or class of possessions.

2. Same — "Equal Protection of the Law" — U. S. Const. Art. 14, § 1. The statute is not unconstitutional as violative of the provisions of section 1 of article 14 of the Constitution of the United States in that it denies to the holders of mortgages recorded after July 1, 1905, the equal protection of the law because a different rule of taxation applies thereunder to mortgages recorded after that date from that which applies to mortgages recorded before that date. The tax is laid as an equal burden upon all whose property has been brought into a designated class for the purpose of taxation and according to a common ratio; there is no discrimination and the exaction is equal; there is no arbitrary selection from a class of property holders for taxation, but there is a date fixed after which investments in mortgages, when made, constitute new subjects for taxation.

3. Same — "Due Process of Law" — U. S. Const. Art. 14, § 1. The statute is not unconstitutional because it deprives the holders of mortgages, recorded after July 1, 1905, of their property without due process of law in violation of section 1 of article 14 of the Federal Constitution; since taking property under the taxing power is taking it by due process of law; proceedings for the assessment of taxes are, necessarily, summary, but if not arbitrary, or unequal, or illegal, they are not within the constitutional inhibition; the provision for due process of law has no application to a case where property is taken under the form of a tax imposed by the legislature, and where the annual tax imposed is at a fixed rate, which is governed by the amount actually due upon the mort-

gage; if a better method, than the one provided, might have been devised
for ascertaining the actual amount of the debt secured by the mortgage,
that is not a legal reason for annulling the one adopted.

*People ex rel. Eisman* v. *Ronner*, 110 App. Div. 816, affirmed.

(Argued April 13, 1906; decided May 25, 1906.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered Feb-
ruary 5, 1906, which affirmed an order of Special Term deny-
ing a motion for a peremptory writ of mandamus to compel
the defendant to accept for record a certain mortgage without
the repayment of the tax on said mortgage as required by the
Mortgage Tax Law.

The facts, so far as material, are stated in the opinion.

*Louis Marshall, Edward Lazansky, Louis F. Levy,
Emanuel S. Cahn* and *H. Seymour Eisman* for appellant.
The act is unconstitutional because it is in violation of article
3, section 20, of the Constitution of the State of New York.
(*People ex rel. Einsfeld* v. *Murray*, 149 N. Y. 367 ; *Trus-
tees, etc.*, v. *Roome*, 93 N. Y. 313 ; *Sweet* v. *City of Syra-
cuse*, 129 N. Y. 317 ; *People* v. *Bd. of Suprs.*, 43 N. Y. 10.)
The act violates the provisions of section 1 of article 14 of
the amendments to the Constitution of the United States, in
that it denies to relator and other holders of mortgages,
recorded after July 1, 1905, the equal protection of the law.
(*People ex rel. Schaeffler* v. *Barker*, 87 Hun, 194 ; *C. S. Co.*
v. *Dederick*, 161 N. Y. 195 ; *Evansville Bank* v. *Britton*,
105 U. S. 322 ; *Lexington* v. *McQuillan*, 9 Dana, 513 ; *Russell*
v. *Croy*, 164 Mo. 69 ; *T. Ins. Co.* v. *Connecticut*, 185 U. S. 364 ;
*Cotting* v. *K. C. S. Y. Co.*, 183 U. S. 79 ; *State* v. *Haun*, 61
Kan. 46 ; *Barbier* v. *Connolly*, 113 U. S. 27 ; *G. C. & S. F.
Ry. Co.* v. *Ellis*, 165 U. S. 150.) The act is unconstitu-
tional, because section 309 thereof deprives the relator and
other holders of mortgages, recorded after July 1, 1905, of
their liberty to contract, and of their property, without due
process of law, of the equal protection of the law and
abridges their privileges and immunities as citizens of the

United States. (*Orvis* v. *Curtis*, 157 N. Y. 657 ; *Matter of Jacobs*, 98 N. Y. 98 ; *People* v. *Lochner*, 177 N. Y. 145.) The act violates article 14 of the amendments to the Constitution of the United States, in that it deprives relator and others in the same position of property without due process of law. (*People* v. *E. T. Co.*, 96 N. Y. 388 ; *Stuart* v. *Palmer*, 74 N. Y. 183 ; *B. G. R. R. Co.* v. *Pennsylvania*, 134 U. S. 232 ; *Savings Society* v. *Multnomah Co.*, 169 U. S. 421.)

*Julius M. Mayer, Attorney General,* for respondent. The act does not offend the provisions of article 3, section 20, of the State Constitution. (*People ex rel. Einsfeld* v. *Murray*, 149 N. Y. 367.) The act does not deny to relator and other holders of mortgages recorded after July 1, 1905, the equal protection of the law, in violation of section 1 of article 14 of the amendments to the Constitution of the United States. (*Savings Society* v. *Multnomah Co.*, 169 U. S. 421 ; *B. G. R. R. Co.* v. *Pennsylvania*, 134 U. S. 232 ; *M. S. Ry. Co.* v. *New York*, 199 U. S. 1.) The act does not deprive the relator of his property without due process of law, does not deny to relator the equal protection of the law, and does not abridge his privileges as a citizen of the United States. (*B. G. R. R. Co.* v. *Pennsylvania*, 134 U. S. 232.) Under our Constitution, with its lack of limitation upon the taxing power of the state, the state may exercise its sovereignty by reaching out into new classes as subject-matter for taxation, and devising new methods. (*People ex rel. M. S. Ry. Co.* v. *State Board of Tax Comrs.*, 199 U. S. 1 ; *S. & L. Soc.* v. *Multnomah Co.*, 169 U. S. 421 ; *B. G. R. R. Co.* v. *Pennsylvania*, 134 U. S. 232 ; *Magoun* v. *Ill. T. & S. Bank*, 170 U. S. 283 ; *Blackstone* v. *Miller*, 188 U. S. 189 ; *Coulter* v. *L. & N. R. R. Co.*, 196 U. S. 599 ; *Cook* v. *Marshall Co.*, 196 U. S. 261.)

Gray, J. The validity of the act, passed by the legislature of this state in 1905, (L. 1905, chap. 729), entitled "An act

to amend the Tax Law in relation to the taxation of debts
secured by mortgages," is assailed by the relator upon several
grounds. In the first place, it is insisted that the act is
unconstitutional, because it was passed in violation of the pro-
visions of section 20 of article III of the State Constitution ;
which reads that "the assent of two-thirds of the members
elected to each branch of the legislature shall be requisite to
every bill appropriating the public moneys or property for
local or private purposes." This act amended the General
Tax Law of 1896, by imposing a tax upon all debts and obli-
gations for the payment of money, which should thereafter be
secured in whole, or in part, by mortgage of real property situ-
ated within this state. Section 307 provides that "upon the
first day of each month the recording officer   *   *   *   shall
pay over to the county treasurer of said county, and in the
counties of New York, Kings, Queens and Richmond to the
chamberlain of the city of New York all moneys received
during the preceding month upon account of taxes paid to
him,   *   *   *   after deducting the necessary expenses of
his office   *   *   *.   The county treasurer of each county
and   *   *   *   the city chamberlain of the city of New York
shall   *   *   * / quarterly thereafter, after having deducted the
necessary expenses of his office,   *   *   *   transmit one-half
of this net amount collected under the provisions of this article
to the state treasurer,   *   *   *.   The remaining portion
thereof in the counties of New York, Kings, Queens and
Richmond shall be paid into the general fund of the city of
New York and be applied to the reduction of taxation,
and in the other counties of the state the remaining por-
tion shall be held by the respective county treasurers subject
to the order of the board of supervisors as hereinafter pro-
vided." In a general sense, this bill did provide for an
appropriation of public moneys, inasmuch as the moneys, of
which disposition was thereby made, were to be collected by
taxation and the purpose, to which a portion of the moneys so
collected was appropriated, was local, because relating to a
political division of the state and not affecting the people of

1906.]     People ex rel. Eisman v. Ronner.     289

N. Y. Rep.]        Opinion of the Court, per Gray, J.

the state in general. But the appropriation was not such as came within the inhibition of the clause of the Constitution, in question. That had reference to the public moneys of the state, as distinguished from public revenues from taxes levied for local purposes. The scheme of this enactment was, clearly, to provide further revenue for the state treasury and, also, for the relief of the particular political divisions of the state. An annual tax was imposed upon mortgages and the net amount, eventually, coming into the hands of the county treasurer, or of the chamberlain of the city of New York, was to belong, one-half, to the state and, one-half, to the particular locality.

The legislature is the source of the taxing power. It imposes and collects taxes for the state treasury for general governmental purposes and it authorizes taxation for local administrative purposes throughout the state. Possessing the power to tax, the right, necessarily, inheres to exercise it in any way, not objectionable upon constitutional grounds, that may be devised as suitable for the purpose in view. I cannot perceive any valid reason why the legislature could not devise a scheme for raising revenues for the general government and for the various local governments by the apportionment of the proceeds of a tax laid upon a certain species, or class, of possessions. The principle of the decision in the case of *People ex rel. Einsfeld* v. *Murray*, (149 N. Y. 367), is, distinctly, applicable to the present case. In that case, an act passed in 1896, "in relation to the Traffic in Liquor" etc., (L. 1896, chap. 112), was assailed upon the same ground that we are now considering. It declared that two-thirds of the excise moneys collected under the tax should "belong to the town, or city, in which the traffic was carried on, from which the revenues were received," and it was held to have been sufficiently enacted by a majority vote of the legislature. It was pointed out, in the opinion of this court, that this appropriation of the excise taxes "operated on the fund at the very moment of its collection. The two-thirds so

appropriated never reaches the treasury of the State and never bears the impress of State money."

The act is assailed upon the ground that it violates the provisions of section 1 of article XIV of the Constitution of the United States; in that it denies to the relator and to other holders of mortgages, recorded after July 1st, 1905, the equal protection of the law. Section 294 of the act imposes "a regular annual tax * * * on every debt and obligation, and upon the mortgage securing the same, described in section 291, except upon mortgages recorded prior to July 1st, 1905, * * * equal to five mills on each dollar of the amount of the principal debt or obligation as the same shall be at nine o'clock ante meridian on the first day of July, 1906, and in each year thereafter," etc. The act became a law on June 3d, 1905, and a date was appointed in the future, upon which the law would be operative upon property held in the form of mortgages. The argument as to the inequality of the law rests upon the proposition that "a different rule of taxation applies to mortgages recorded after July 1st, 1905, from that which applies to those recorded before that date." In the one case, it is said, the holder has not the right to make deductions for indebtedness and in the other he has, and, hence, "some mortgages * * * are not taxable, while others, under exactly the same conditions, are required to contribute to the expenses of government." The reference is to the provisions of the General Tax Law, under which a person assessed upon his personal property may deduct his just debts from the amount of the assessment.

It is true that the effect of the act, to the extent that a person's investments, after a certain date, should be made in mortgage securities, was to segregate them from his other personal property for specific taxation; but such investments were voluntary and while, conceivably, the law might act repressively, in instances, nevertheless, government has the power. It may change the methods, or rate, of taxation, and it may classify new subjects for taxation. The power of the state in its sovereign capacity to impose taxes is unlimited in

1906.]      People ex rel. Eisman *v.* Ronner.      **291**

N. Y. Rep.]      Opinion of the Court, per Gray, J.

extent, so far as no constitutional guaranty is infringed upon, and is controlled only by the considerations of wisdom and policy, to be, reasonably, expected of a legislative body, acting upon the interests of its constituents. In the raising of revenues for the needs of government, the power may be exercised upon every occupation, every object of industry, or enjoyment, and every species of possession. The purpose of a system of taxation; the apportionment of a tax and the property, or persons, to be affected are matters within the legislative discretion. (*McCulloch* v. *Maryland*, 4 Wheat. 316; *Providence Bank* v. *Billings*, 4 Peters, 514; *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232; *Genet* v. *City of Brooklyn*, 99 N. Y. 296; *Woodruff* v. *Oswego Starch Factory*, 177 ib. 23.) These principles, familiar from their frequent statement in the decisions of federal and state courts, have their origin in the necessity that the government shall have an unrestricted and a searching power to impose taxes upon persons and upon their property for public purposes. The legislative department is to determine what shall be the public burden and it is not for the judicial department to inquire what degree of taxation is the legitimate use, and what degree may amount to the abuse, of the power. (*McCulloch* v. *Maryland, supra.*) There is no constitutional guaranty that taxation shall be just and equal; though underlying this great governmental power, and implied from the nature of our political institutions, is the principle that taxation shall be equal, in the sense that it shall not be arbitrary and that there shall be no discrimination against persons, by laying greater burdens upon one than are laid upon others in the same calling or condition. (*Mercantile Nat. Bank* v. *Mayor, etc., of N. Y.*, 172 N. Y. 35; *Genet* v. *City of Brooklyn, supra ; Bell's Gap R. R. Co.* v. *Pennsylvania, supra.*) It was observed in *People* v. *Home Insurance Co.*, (92 N. Y. 347), that "absolute equality in laying the burdens of taxation, as shown by experience, is impossible of attainment." Perfection in taxation is a speculative and frivolous idea. The People have conferred upon their legislative body an unlimited power

of taxation, which, it is conceded, is essential to the administration of government, and if legislators abuse their power in enacting some new plan of taxation, or act unwisely in imposing some new form of tax, it is to the People that they are answerable. We cannot substitute our own judgment for that of the Legislature in matters of legislation. It has been observed that government is aggressive towards the individual. It may appear so, when the exercise of the taxing power is directed to specific classes of persons, or of property. The theory of taxation is that it is for the general benefit, in providing funds for the carrying on of government, and, with whatever degree of justice, it is complained that a system of taxation is harsh and partial in its operation, the only remedy, when it is a matter of discretion and not of discrimination, is by an appeal to the sense of justice and the wisdom of the members of the legislative body.

The tax under this law is, in effect, upon the interest of the mortgagee in the real estate. The "situs" of all mortgages is fixed within this state by section 291, thus operating upon non residents, as well as residents, and their record evidences the liability to the tax. It was one way of reaching personal property through one of its visible forms and with the justice, or propriety, of the legislation the court has no concern. The tax is laid as an equal burden upon all whose property has been brought into a class for the purpose of taxation and the tax is according to a common ratio. There is no discrimination and the exaction is equal; for all persons pay the same tax upon the same value of that description of property.

The fixing of a date in the future, when the law should become operative upon that species of possessions, allowed a reasonable interval for arrangement and adjustments. Those who held such prior to the date fixed were not subject to the tax. There was no arbitrary selection from a class of property holders for taxation; but there was a date fixed after which such investments, when made, would constitute new subjects for taxation. The objection, upon the ground discussed, is, therefore, in my opinion, unsound.

Another ground urged by the appellant as invalidating the act is that it deprives the relator and others in his position of their property without due process of law. The provisions of the fourteenth amendment of the Federal Constitution, so frequently invoked with such irrelevance as to suggest the existence of considerable confusion of thought as to its intended scope, are appealed to and the argument is made that the mortgagee has no opportunity for a hearing upon the value of the debt and the mortgage. Taking property under the taxing power is taking it by due process of law. In such a case, due process of law does not mean some judicial proceeding. Proceedings for the assessment of taxes are, necessarily, summary and if not arbitrary, or unequal, or illegal, they are not within the constitutional provision. It is not essential to the validity of the tax that the person should have been present, or should have had the opportunity to be present, in some tribunal when assessed. Due process of law and the equal protection of the laws are secured, if the law operates alike upon all who are similarly situated and if it does not subject the person to an arbitrary exercise of the powers of government. (See *McMillen* v. *Anderson*, 95 U. S. 37; *Duncan* v. *Missouri*, 152 ib. 377.) The provision for due process of law has no application to such a case as this, where the relator's property has been taken under the form of a tax imposed by an act of the legislature. This act provides (sec. 295) that every mortgage "shall contain at the end thereof, above the signature of the mortgagor, a statement of the amount advanced at that time on said mortgage and of the maximum amount of principal indebtedness, or obligation, not including interest, taxes  *  *  *  or other expenses made by the mortgagee to preserve the mortgage lien, which is or *  *  *  may  *  *  *  be outstanding so as to be secured by the mortgage." The annual tax imposed is at a fixed rate, which is governed by the amount actually due upon the mortgage, according to the time of the advance of principal. There is no dispute as to the value of the relator's mortgage and the presumption is that it represented the amount of the

obligation stated. The provisions of section 295, in connection with those of section 301, which provide for the correction of the list, as to the actual amount of the debt secured by the mortgage, afford protection against error and if a better plan might have been devised, that is not a legal reason for annulling the one adopted.

Another objection is made upon the ground, in substance, that section 309 violates the same amendment of the Federal Constitution and, also, section 6 of article 1 of the State Constitution, because affecting the liberty to contract and abridging the privileges and immunities of citizens of the United States. The section declares usurious and void any contract, or agreement, in respect to any mortgage obligation, or deed of trust, by which the mortgagor shall agree to pay the tax imposed, and prohibits the recovery of any judgment upon the obligation or the mortgage in such a case. I agree with the view of the court below that this question is not presented in this case. It had no connection with the imposition of this tax. Nothing in the record suggests a controversy over the rate of interest secured by the mortgage. The only question was as to the right, as a condition of recording the mortgage, to exact from the relator the tax imposed by the law on the amount of the principal indebtedness.

No other question demands consideration and, for the reasons given, I advise the affirmance of the order appealed from, with costs.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, VANN, WILLARD BARTLETT and CHASE, JJ., concur.

Order affirmed.