In the Matter of the Transfer Tax upon the Estate of CHARLES W. WATSON, Deceased.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant; ANNA H. WATSON et al., as Executors, Respondents.

Constitutional law — validity of chapter 700, Laws of 1917, amending and adding to Tax Law.

Article 15, as amended, and section 221b of the Tax Law (Cons. Laws, ch. 60), as added by chapter 700 of the Laws of 1917, are valid and constitutional enactments.

*Matter of Watson*, 186 App. Div. 48, reversed.

(Argued February 20, 1919; decided May 20, 1919.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered

January 10, 1919, which affirmed an order of the New York County Surrogate's Court assessing a transfer tax upon the estate of Charles W. Watson, deceased.

The facts, so far as material, are stated in the opinion.

*Alexander Otis, John B. Gleason* and *Lafayette B. Gleason* for appellant. Article 15 of the Tax Law is constitutional and the scheme of taxation created by sections 331, 336 and 221b of the Tax Law is reasonable and workable. (*Connolly v. Union S. P. Co.*, 184 U. S. 540; *Eisman v. Ronner*, 185 N. Y. 285; *Amoskeag Savings Bank v. Purdy*, 231 U. S. 373; *American Sugar Refining Co. v. Louisiana*, 179 U. S. 89; *Northwestern Life Ins. Co. v. Wisconsin*, 247 U. S. 132; *Hatch v. Reardon*, 204 U. S. 152; *Matter of Keeney*, 194 N. Y. 281; *Billings v. Illinois*, 188 U. S. 97; *Matter of Penfold*, 216 N. Y. 163; *Matter of Ramsdill*, 190 N. Y. 492.) The respondent has failed to show that this transfer is taxed without due process of law, or without the equal protection of the law. (*State of New York v. County of Kings*, 125 N. Y. 312; *Plummer v. Coler*, 178 U. S. 115; *Express Co. v. Seibert*, 142 U. S. 339; *Matter of Pell*, 171 N. Y. 48; *Matter of Palmer*, 33 App. Div. 307; 158 N. Y. 669; McElroy on Inheritance Taxation, 312.) The legislature, in imposing the additional transfer tax upon investments which had hitherto escaped taxation altogether, acted upon sound reason and not arbitrarily or capriciously. (*Matter of White*, 208 N. Y. 64.) A classification for purposes of the transfer tax of property which has not borne its share of general taxes, as distinguished from other property which has borne its share of such taxes, is within the constitutional discretion of the legislature. (*People ex rel. Eisman v. Ronner*, 185 N. Y. 285; *People ex rel. Hatch v. Reardon*, 184 N. Y. 431; *Matter of McPherson*, 104 N. Y. 306; Cooley on

25

Const. Lim. [6th ed.] 587; *People ex rel. Farrington* v. *Mensching*, 187 N. Y. 10; *Cahen* v. *Brewster*, 203 U. S. 543; *Matter of Pritchard*, 118 La. Ann. 883; *Matter of Fell*, 119 La. Ann. 1037; *Matter of Stauffer*, 119 La. Ann. 66; *Matter of Westfeldt*, 122 La. Ann. 836.) A penalty of five per cent is not imposed upon "innocent beneficiaries" for the "misdeeds or omissions" of their benefactor. (*Matter of Swift*, 137 N. Y. 77; *Matter of White*, 208 N. Y. 64; *Stanford's Estate*, 126 Cal. 112; *National Deposit Co.* v. *Stead*, 250 Ill. 284; *Cahen* v. *Brewster*, 203 U. S. 543; *Stevens* v. *Bradford*, 185 Mass. 439; *Carpenter* v. *Commonwealth*, 17 How. [U. S.] 462; *Ferry* v. *Campbell*, 110 Ia. 290; *Morris' Estate*, 138 N. C. 259; *Magoun* v. *Illinois Trust Co.*, 170 U. S. 263.) The fact that section 221b only imposed a tax on the transfer of securities of a decedent who was liable for investment tax in his lifetime and who has not paid that tax, does not render it unconstitutional. (*State* v. *County of Kings*, 125 N. Y. 312; *United States* v. *Perkins*, 163 U. S. 625; *Matter of Ball*, 161 App. Div. 731; *Matter of Church*, 176 App. Div. 910; *Matter of Romaine*, 127 N. Y. 80; *Matter of Leopold*, 35 Misc. Rep. 369; *Matter of McCahill*, 171 Cal. 482; *Herron* v. *Keeran*, 59 Ind. 472; *People* v. *Griffith*, 245 Ill. 532.) The classification based upon property transferred as an inheritance is constitutional. (*Matter of McPherson*, 104 N. Y. 316; *Matter of Lord*, 186 N. Y. 549; *Beers* v. *Glynn*, 211 U. S. 477; *People ex rel. Farrington* v. *Mensching*, 187 N. Y. 10.) The constitutional power of the legislature as to ordinary taxes is very great, but its power over succession, inheritance or transfer tax matters is much greater and sufficient to sustain this section. (*Hatch* v. *Reardon*, 184 N. Y. 431; *People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8; *Matter of White*, 208 N. Y. 64; *Matter of Delano*, 176 N. Y. 491; *Matter of Sherman*, 153 N. Y. 1; *Matter of Dows*, 167 N. Y. 227; *Magoun* v. *Illinois Trust & Sav. Bank*, 170 U. S. 283; *United States*

v. *Perkins*, 163 U. S. 625; *Mager* v. *Grima*, 8 How. [U. S.] 490; *Chanler* v. *Kelsey*, 205 U. S. 466.)

*Eustace Conway* for respondents. Section 221b is not a separate nor a direct tax, but is intended to be an amendment to the Transfer Tax Law to be used to enforce the provisions of the Investment Tax Law. (*Matter of Pell*, 171 N. Y. 48; *Dixon* v. *Jersey City*, 37 N. J. Law, 42.) Section 221b of the Tax Law is unconstitutional in that it deprives citizens of property arbitrarily and unjustly and without due process of law. (*Stuart* v. *Palmer*, 74 N. Y. 183; *Matter of Euston*, 113 N. Y. 175; *Cotting* v. *Kansas City S. Y. Co.*, 183 U. S. 79; *Reagan* v. *Farmers' L. & T. Co.*, 154 U. S. 362; *Hauser* v. *N. B. M. Ins. Co.*, 206 N. Y. 455; *G. C. & S. F. R. Co.* v. *Ellis*, 165 N. Y. 150; *Gast Realty Co.* v. *Schneider Granite Co.*, 240 U. S. 55; *Utsy* v. *Hiott*, 30 S. C. 360; *People ex rel. Eisman* v. *Ronner*, 185 N. Y. 291; *Matter of Henneberger*, 155 N. Y. 42.) The statute is unconstitutional in that it deprives persons of property without due process of law, and is arbitrary and unreasonable. (*People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8; *Myles Salt Co.* v. *Iberia Drainage Dist.*, 239 U. S. 478; *Yick Wo* v. *Hopkins*, 118 U. S. 350; *Matter of Otis*, N. Y. L. J. June 11, 1918; *Matter of Von Bernuth*, N. Y. L. J. May 16, 1918; *Matter of Washbourne*, N. Y. L. J. May 21, 1918; *G. C. & S. F. R. Co.* v. *Ellis*, 165 U. S. 150; *Matter of Wendel*, 223 N. Y. 433.) The act is obnoxious to article 3, section 24, of the Constitution of the state of New York, in that it fails to distinctly state the tax and only attempts to impose a tax by reference to another law. (*People* v. *Turner*, 117 N. Y. 227; *People ex rel. Hopkins* v. *Bd. Suprs.*, 52 N. Y. 567; *Matter of Mayor, etc.*, 99 N. Y. 570; *Dyker M. L. Co.* v. *Cook*, 3 App. Div. 164; *Perkins* v. *Hurt*, 158 N. Y. 310; *Matter of Sloane*, 154 N. Y. 115; *Matter of McPherson*, 104 N. Y. 318; *Sawter* v. *Shoenthal*, 83

N. J. L. 499; *Jordan* v. *Moore*, 82 N. J. L. 552; *Dixon* v. *Russell*, 50 Vroom, 490.)

*Malcolm S. McN. Watts* and *Edward R. Greene* for Guaranty Trust Company of New York et al., intervening. Regarding section 221b of the Tax Law as an act imposing a penalty, it is unconstitutional under the Constitutions of New York and of the United States, in that it takes property without due process of law and denies the equal protection of the laws. (*Matter of Von Bernuth*, N. Y. L. J. May 16, 1918; *Matter of Otis*, N. Y. L. J. June 11, 1918; *Lancaster* v. *Richardson*, 4 Lans. 136; *Matter of Strobel*, N. Y. L. J. May 15, 1918; *Yick Wo* v. *Hopkins*, 118 U. S. 256.) Section 221b of the Tax Law, regarded as an amendment to the Transfer Tax Law of the state of New York, is unconstitutional, in that it denies the equal protection of the laws and is not due process of law. (*Matter of White*, 208 N. Y. 64; *Gautier* v. *Ditmar*, 204 N. Y. 20; *G. C. & S. F. R. Co.* v. *Ellis*, 165 U. S. 150; *Yick Wo* v. *Hopkins*, 118 U. S. 350; *People* v. *Schench*, 257 Ill. 384; *Stuart* v. *Palmer*, 74 N. Y. 183; *Myles Salt Co.* v. *Iberia Drainage Dist.*, 239 U. S. 478; *Gast Realty Co.* v. *Schneider Granite Co.*, 240 U. S. 55; *Waters-Pierce Oil Co.* v. *Hot Springs*, 169 S. W. Rep. 293; *Matter of Pell*, 171 N. Y. 48; *Utsy* v. *Hiott*, 30 S. C. 360; *Matter of Langford*, 53 Fed. Rep. 570.) Regarding section 221b of the Tax Law as an act laying a direct tax, it is unconstitutional, in that it denies the equal protection of the laws. (*Matter of Pell*, 171 N. Y. 48.)

*Louis O. Van Doren* and *Herrick McClenthen* for Title Guarantee and Trust Company, intervening. Article 15 of the Tax Law is unconstitutional and void. (*Connolly & Dee* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Cotting* v. *Kansas City Stockyards Co.*, 183 U. S. 79; *People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8;

*County of Santa Clara* v. *S. P. R. R. Co.*, 18 Fed. Rep. 385; 118 U. S. 394.) Section 221b of the Transfer Tax Act is unconstitutional and void. (*People ex rel. Farrington* v. *Mensching*, 187 N. Y. 21; *Matter of Otis*, 103 Misc. Rep. 665.)

*John Hill Morgan* and *Henry N. Arnold* for Franklin Trust Company, intervening. There is no obligation on the part of an owner of bonds to pay any tax whatsoever thereon, unless they have been assessed by the tax assessor. (*Clark* v. *Norton*, 49 N. Y. 243; *Westfall* v. *Preston*, 49 N. Y. 349; *Thompson, etc., Co.* v. *Fitz*, 131 N. Y. Supp. 375; *People* v. *Forrest*, 96 N. Y. 544; *Overing* v. *Foote*, 65 N. Y. 263; *People* v. *Miller*, 73 Misc. Rep. 214; *Burger* v. *Farrell*, 50 Misc. Rep. 497.) Where no obligation exists no penalty can attach, and since section 221b seeks to impose a penalty not predicated on any infraction of duty, it denies due process of law, and is unconstitutional. (12 Corpus Juris, 1188.)

*William E. Bennett* for executors of estate of James Mingay, deceased, intervening. Article 15 of the Tax Law is unconstitutional and void because it violates section 2 of article 10 of the State Constitution. (*People* v. *Albertson*, 55 N. Y. 50; *People* v. *Pelham*, 215 N. Y. 374; *People* v. *Tax Commissioners*, 174 N. Y. 417; 199 U. S. 1; *Allison* v. *Welde*, 172 N. Y. 421; *Matter of Brenner*, 170 N. Y. 185; *Melody* v. *Goodrich*, 67 App. Div. 368; *Rathbone* v. *Wirth*, 150 N. Y. 459; *People* v. *Raymond*, 37 N. Y. 428.)

CRANE, J. The question presented for determination is whether section 221-b of the Tax Law [Cons. Laws, ch. 60], added by chapter 700 of the Laws of 1917, is constitutional. The lower courts have held it to be unconstitutional. The section reads as follows:

"*Additional tax on investments in certain cases.* Upon every transfer of an investment, as defined in article

fifteen of this chapter, taxable under this article, a tax is hereby imposed, in addition to the tax imposed by section two hundred and twenty-one-a, of five per centum of the appraised inventory value of such investment, unless the tax on such investment as prescribed by article fifteen of this chapter or the tax on a secured debt as defined by former article fifteen of this chapter shall have been paid on such investment or secured debt and stamps affixed for a period including the date of the death of the decedent or unless the personal representatives of decedent are able to prove that a personal property tax was assessed and paid on such investment or secured debt during the period it was held by decedent; or unless the decedent was actually engaged in the *bona fide* purchase and sale of investments as a business, and at the time of his death had maintained an office or place of business in this state for the carrying on of the actual *bona fide* business of purchasing and selling investments, as distinguished from the purchase thereof for investment purposes, and had owned and held such investment for sale for the purpose of his business and not as an investment for a period of not more than eight months prior to his death."

The personal property of an individual, resident in the state of New York, was, at the time of this enactment, subject to two methods of assessment and taxation. By section 6 and section 8 of the Tax Law he was to be assessed on the full value of his personal property in the tax district where he resided, allowance being made for his debts.

By article XV of the Tax Law the owner of personal property coming within the description of investments therein defined could pay to the state a tax of $0.75 per hundred dollars upon the face value of such investments and be exempted from any other local or state tax.

Under this system of assessment and taxation certain

well-known facts and conditions existed regarding taxa-
tion upon personal property which must have been in the
mind of the legislature at the time of the above enactment.
A man was not compelled to tax himself or to present to
the tax officers of his resident district a full and complete
list of his securities. Assessments upon personal property
or investments were thereupon made according to such
meagre information as the assessors could obtain or else
according to appearance, reputation or surmise. It
was also a well-known fact that in many local com-
munities no attempt was made to assess personalty at its
full value, as according to the tax rate it would have
worked extreme hardship.

Under the Laws of 1911, chapter 802, as thereafter
amended, the tax provided by the state upon invest-
ments was permissive and not compulsory, the alternative
being that if the bonds were not submitted in accordance
with the methods provided by that law they were subject
to an assessment by the locality as before stated.

Under these conditions it was a matter of common
knowledge that some owners submitted all or part of their
bonded investments to the state tax, others paid upon a
limited local assessment, and others not at all, and that
a very large part of this kind of property went untaxed
altogether.

Such were the facts as developed in this estate of
Charles W. Watson, deceased, which is typical and not
exceptional. When he died in August, 1917, leaving a
net estate of $470,256.95, $109,470.73 of this consisted
of assessable bonds upon which his last assessment in
1914 amounted to only $30,000; since 1914 he had acquired
securities valued at $59,284.54 which had not been
assessed at all. The bonds had not been submitted under
the State Tax Law. Thus Charles W. Watson had
possessed for some years $168,755.27, of which only
$30,000 had paid a tax.

This kind of property, therefore, divided itself into three

classes, or if we prefer, varied in three different ways under the operation of the Tax Law, by reason of circumstances and conditions. Some of the investments yielded to local assessment, others submitted to the state tax and still a large part yielded no tax.

These facts were before the legislature when they sought to reach this untaxed property in the methods devised by section 221-b of the Tax Law. Article X of that law had already established an inheritance tax varying in amount according to the degrees of relationship of the transferee. To this was added, by section 221-b, an additional tax of 5% upon those investments passing by will or distribution which had not been assessed locally or paid the state stamp tax.

In considering the constitutionality of this provision it has been suggested that while the state may enact an inheritance tax it must treat all personal property alike and cannot classify it according to nature or kind. Why this suggestion should separate personal property from realty I need not now stop to consider. That in the development of taxation personal property has varied in treatment and in disposition is evidenced by the Mortgage Tax Law (*People ex rel. Eisman v. Ronner*, 185 N. Y. 285), the bank stock assessment (*People ex rel. Bridgeport Savings Bank v. Feitner*, 191 N. Y. 88; *Amoskeag Savings Bank v. Purdy*, 231 U. S. 373), the stock transfer tax (*People ex rel. Hatch v. Reardon*, 184 N. Y. 431; *Matter of Ball*, 161 App. Div. 79; *Matter of Church*, 176 App. Div. 910) and the special franchise tax (*People ex rel. Met. St. Ry. Co. v. State Bd. Tax Commissioners*, 174 N. Y. 417).

In dealing with a law's constitutionality we are examining the question of legislative powers, or to be accurate, the limitation placed by constitutions upon power. Whether the legislature has acted wisely, made a proper choice, created difficulties, worked hardships or been unfair to a class or to a particular kind of property is

never indicative of a limitation. Limitations are to be found in the words and intendment of the Constitution and the fundamental principles of government embodied therein. The taxing power, both direct and through an inheritance tax, is very broad and submits to few restrictions. Such laws need not be submitted to courts for their approval and can only meet with disapproval when some fundamental principle has been violated. In speaking of the legislative power, whether it be a police power, a taxing power or any other power of like nature, we have no ready-made formula which can be easily applied but must be governed by the principles developed in the law, either by a long series of legislation or by custom, or by judicial expression. However accurate may be our logical process we must not start with assumed premises, but with those furnished us by the authorities.

Although repeating what has heretofore been said by this court, we turn to a few of these authorities to ascertain the rule which must be applied to the new state of facts arising in this case.

This court said, through Gray, J., in *People ex rel. Eisman* v. *Ronner* (185 N. Y. 285, 289) regarding the Mortgage Tax Law:

" I cannot perceive any valid reason why the legislature could not devise a scheme for raising revenues for the general government and for the various local governments by the apportionment of the proceeds of a tax laid upon a certain species, or class, of possessions. * * * It [the legislature] may change the methods, or rate, of taxation, and it may classify new subjects for taxation. * * * The purpose of a system of taxation; the apportionment of a tax and the property, or persons, to be affected are matters within the legislative discretion. * * * There is no constitutional guaranty that taxation shall be just and equal; though underlying this court's governmental power, and implied from the

nature of our political institutions, is the principle that taxation shall be equal, in the sense that it shall not be arbitrary and that there shall be no discrimination against persons, by laying greater burdens upon one than are laid upon others in the same calling or condition."

We said in *People ex rel. Hatch* v. *Reardon* (184 N. Y. 431), regarding the constitutionality of the Stock Transfer Act:

" The classification made by selecting one kind of property and taxing a transfer of that only, is assailed as so arbitrary, discriminating and unreasonable as to deprive certain persons of their property without due process of law and to withhold from them the equal protection of the laws.

" All taxation is arbitrary, for its compels the citizen to give up a part of his property; it is generally discriminating, for otherwise every thing would be taxed, which has never yet been done, and there would be no exemption on account of education, charity or religion, and frequently it is unreasonable, but that does not make it unconstitutional, even if the result is double taxation. * * *

" A tax may be imposed only on certain callings and trades, for when the state exerts its power to tax it is not bound to tax all pursuits or all property that may be legitimately taxed for governmental purposes. It would be an intolerable burden if the state could not tax any property or calling unless at the same time it taxed all property or all callings." (Quoting from *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 562.)

Turning to *Genet* v. *City of Brooklyn* (99 N. Y. 296, 306) we find it there stated that.

" The power of taxation being legislative, all the incidents are within the control of the legislature. The purposes for which a tax shall be levied; the extent of taxation; the apportionment of the tax; upon what property or class of persons the tax shall operate; whether

the tax shall be general or limited to a particular locality, and in the latter case, the fixing of a district of assessment; the method of collection, and whether the tax shall be a charge upon both person and property, or only on the land, are matters within the discretion of the legislature and in respect to which its determination is final." (See, also, *Matter of Wendel*, 223 N. Y. 433.)

Passing from the consideration of the general taxing power to the authorities touching the inheritance tax, we find the power almost unlimited. The state having the power to abolish testamentary dispositions and the right to pass property by distribution we would naturally conclude that it could also determine the nature or kind of property that should pass, or could place a limitation or condition upon the transfer by death of any or all property. (See what Mr. Justice HOLMES said in *Chanler* v. *Kelsey*, 205 U. S. at page 479.) But it is unnecessary for us to touch upon the extent of the power as we shall confine our attention to the facts as presented and determine whether the power exists in this instance.

We have had occasion to say in *Matter of Delano* (176 N. Y. 486, 491):

" The privilege of making a will is not a natural or inherent right, but one which the state can grant or withhold in its discretion. If granted, it may be upon such conditions and with such limitations as the legislature sees fit to create. The payment of a sum in gross, or of an amount measured by the value of the property affected, may be exacted, or the right may be limited to one or more kinds of property and withdrawn as to all others."

The case of *United States* v. *Perkins* (163 U. S. 625, 627) dealt with a tax upon personal property bequeathed by will to the United States. The opinion states:

" While the laws of all civilized states recognize in every citizen the absolute right to his own earnings, and to the enjoyment of his own property, and the

increase thereof, during his life, except so far as the State may require him to contribute his share for public expenses, the right to dispose of his property by will has always been considered purely a creature of statute and within legislative control. * * * In this view, the so-called inheritance tax of the State of New York is in reality a limitation upon the power of a testator to bequeath his property to whom he pleases; a declaration that, in the exercise of that power, he shall contribute a certain percentage to the public use; in other words, that the right to dispose of his property by will shall remain, but subject to a condition that the State has a right to impose. * * * Thus the tax is not upon the property, in the ordinary sense of the term, but upon the right to dispose of it, and it is not until it has yielded its contribution to the State that it becomes the property of the legatee."

The opinion also quotes a statement of Mr. Chief Justice TANEY taken from *Mager* v. *Grima* (8 How. [U. S.] 490, 493): " * *. * the law in question is nothing more than an exercise of the power which every State and sovereignty possesses, of regulating the manner and terms upon which property real or personal, within its dominion may be transmitted by last will and testament, or by inheritance; and of prescribing who shall and who shall not be capable of taking it. * * * If a State may deny the privilege altogether, it follows that, when it grants it, it may annex to the grant any conditions which it supposes to be required by its interests or policy."

The principles enunciated in *Magoun* v. *Illinois Trust & Savings Bank* (170 U. S. 283, 288) may be helpful: ·

" The right [says the opinion] to take property by devise or consent is a creature of the law, and not a natural right — a privilege, and, therefore, the authority which confers it may impose conditions upon it. From these principles it is deduced that the states may tax

the privilege, discriminate between relatives, and between these and strangers, and grant exemptions; and are not precluded from this power by the provisions of the respective state constitutions requiring uniformity and equality of taxation."

The inheritance tax in this case was attacked as being arbitrary and causing discriminations and creating inequality in the burdens of taxation. Writing of the requirements of the Fourteenth Amendment and the equal protection of the laws to which all persons are entitled, Mr. Justice McKENNA says:

" It merely requires that all persons subjected to such legislation shall be treated alike under like circumstances and conditions, both in the privilege conferred and the liabilities imposed. * * * Mr. Justice FIELD said in *Mobile County* v. *Kimball*, 102 U. S. 691, that this court is not a harbor in which can be found a refuge from ill-advised, unequal and oppressive state legislation. And he observed in another case: ' It is hardly necessary to say that hardship, impolicy or injustice of state laws is not necessarily an objection to their constitutional validity.' * * * There is, therefore, no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities. And necessarily so. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things. Bearing these considerations in mind we can solve the questions in controversy."

Referring to the Fourteenth Amendment and the State Inheritance Tax Laws, the case of *Campbell* v. *California* (200 U. S. 87, 95) gave occasion for Mr. Justice WHITE to say:

" With the motives of public policy which may induce a State to prefer near relatives by affinity to collateral relatives, we are not concerned, since the Fourteenth Amendment does not deprive a State of the power to regulate and burden the right to inherit, but at the most

can only be held to restrain such an exercise of power as would exclude the conception of judgment and discretion, and which would be so obviously arbitrary and unreasonable as to be beyond the pale of governmental authority."

The provisions of the New York Inheritance Tax Law, chapter 713 of the Laws of 1887, amending chapter 483 of the Laws of 1885, were under review in *Beers* v. *Glynn* (211 U. S. 477, 484). A discrimination and inequality existed, for by this law the personalty of a non-resident decedent who owned realty in the state of New York was taxed, whereas no provision was made for taxing the personalty of a non-resident decedent who had not owned any realty within the state. Mr. Justice BREWER said:

" But though the operation of the statutes creates a difference, this *even if intentional* is not of itself sufficient to invalidate the tax. The power of the State in respect to the matter of taxation is very broad, at least so far as the Federal Constitution is concerned. It may exempt certain property from taxation while all other is subjected thereto. It may tax one class of property by one method of procedure and another by a different method."

From what has been said it will be apparent that the discretion given to the legislature to tax property passing by will or inheritance is very broad.

Assuming without deciding that the discretion to classify personal property which must pay an inheritance tax before passing by will or inheritance is limited to a classification which is based upon some reason and not the mere caprice of the legislature, this present law under discussion comes within such a rule.

Holding up the section under discussion for comparison with these authorities as a pattern, does it fall within or without the line of constitutional limitation? In the first place we may consider this tax as though it were the first and only tax placed upon transfers. The fact

that it is an additional tax does not change the principle involved. The tax is then, one placed upon the transfer of property at the time of death which has not theretofore paid any tax, local or state.

The objection cannot be pressed, that the beneficiary under the will is punished for the misdeeds of the ancestor in not paying a local or state tax. The beneficiary has no claim to the property of an ancestor except as given by law, and, if the state has a right to impose a tax at all upon the passing of property, the transferee takes only what is left after the tax is paid. The state, therefore, having the power to place an inheritance tax upon property which has escaped taxation during the lifetime of the testator, it is no valid objection that the legatee may deem himself punished by the circumstance. Neither is there foundation in the authorities for the assertion or implication that the inheritance tax laws must look with indifferent eye upon the kind of property transferred and cannot single out personalty as distinguished from realty and the like. Difficulties in practical application of the statute are perhaps more imaginary than real, but if they do exist, such difficulties are a matter for legislative and not judicial consideration. (*Matter of McPherson*, 104 N. Y. 306, 324.) Slight inequalities or injustices which may follow from the application of this law as it is applied by the taxing authorities are not in and of themselves constitutional objections (*Matter of White*, 208 N. Y. 64), unless they become so great as to violate the principles stated. It has been said that this is not classification but a mere arbitrary tax upon the right to transfer investments. Is there not, at least, a semblance of reason in seeking to tax upon inheritance property which has not been taxed locally or for state purposes, when such fact can only be discovered upon the death of the owner? The matter at least permits of argument and is not so capricious and whimsical as to be purely arbitrary. It has in it at least an effort for

the equalization of taxation and the adjustment of the burdens of government.

The fact that other bodies have come to the same conclusion as our own legislature may have a slight bearing upon the element of reason in this tax and its freedom from mere arbitrary action.

Thus Connecticut has placed an estate tax upon property upon which no town or city tax has been assessed during the year preceding death. (Section 1190, General Statutes of Conn.) And Louisiana exempts from a transfer tax property which has borne its just proportion of taxes prior to inheritance. (Quoted in note to *Cahen* v. *Brewster,* 203 U. S. 543; art. 235 and art. 236 of the Const. of La.; *Succession of Pritchard,* 118 La. Ann. 883; *Succession of Westfeldt,* 122 La. Ann. 836.)

The objection to a tax that it is an arbitrary discrimination must be approached with the greatest caution. (*New York ex rel. Hatch* v. *Reardon,* 204 U. S. 152, 158.)

A further objection has been urged upon us. It is that the act illegally exempts dealers in investments and thus makes this law unequal in operation.

By section 336 of the Tax Law, as amended by chapter 700 of the Laws of 1917, the owner of any investment, as defined by the article (Article XV), shall be assessed upon such an investment in the tax district where he resides upon the fair market value thereof without deduction for his just debts, except that such deduction may be allowed to any person in respect to any investment which, for the purpose of his business, shall be temporarily owned and held for sale by him, then actually engaged in the *bona fide* purchase and sale of such investments as a business. Such deduction shall not be allowed in respect to such investments held for a longer period than eight months.

Section 221-b also contains a like exception from the inheritance tax upon property which has not paid a

local or state tax. That is, the section does not apply to a decedent who was actually engaged in the *bona fide* purchase and sale of investments as a business at the time of his death and had and maintained an office in this state for that purpose. The exception does not apply if the investments are held for eight months. All exemptions do not render tax laws unconstitutional. There are many reasons for exempting a certain amount of property, or a class of property, or institutions, such as charitable organizations and persons carrying on religious work. (*American Sugar Refining Co.* v. *La.*, 179 U. S. 89; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Northwestern Mut. Life Ins. Co.* v. *Wisconsin*, 247 U. S. 132, 140.)

Dealers in investments, as a business, disposing of their bonds as vendors or brokers within a few months after acquisition cannot be considered the holders of such property for investment purposes. They may sell indifferently to persons within and without the state; they may hold a large amount of such bonds with borrowed capital for the purpose of organizing or developing corporate enterprise. It cannot reasonably be expected that a dealer would pay the present state tax on all such securities passing through his hands in transfer from seller to purchaser, or held by him solely for sale on profit. There is a reason, we think, for such an exemption which saves this law from being a violation of that equality demanded of legislation.

Illustrations of how this tax may work inequitably, if the exemptions are allowed to certain relatives under section 221, have been conceived by the courts below. Sufficient to say that in our judgment the exemptions do not apply to section 221-b. It is a flat tax of five per cent upon the transfer of property not theretofore taxed as specified. Reference to the investments taxable under this article means the investment securities specified

by article XV passing by inheritance and taxed as stated in article X. The exemptions are classified by section 221 as exceptions and limitations and are not continued to cover the additional tax.

Again, it must be noted, that if the amount of an estate is eaten up by debts so that the assets consisting of these investments do not pass to anybody, of course, there can be no tax. Likewise the investments should pay their proportionate part of the debts without tax.

One of the intervenors has taken the position that the said investment tax, article XV of the Tax Law, is wholly unconstitutional, in that it withdraws a certain portion of property from personal assessment by local officials. The claim is made that this is contrary to the local self-government policy as enacted into the State Constitution by section 2, article X, and he refers to *People ex rel. Town of Pelham* v. *Vil. of Pelham* (215 N. Y. 374).

No attempt is made by this Investment Tax Law to give to state officials the right to tax for local purposes, or the functions of local representatives. The state has the right to tax for its own purposes. A case might arise where so much property was withdrawn from local assessment as to deprive local officials substantially of all their power, but such is not this case — far from it.

While the assessment of property for the purposes of taxation in this state has always been a function of local officers, their duties may be modified or regulated by the legislature so long as there is no substantial impairment of the right of home rule or no intent or attempt to evade the constitutional provisions. (*People ex rel. Wood* v. *Draper*, 15 N. Y. 541; *Astor* v. *Mayor, etc.*, 62 N. Y. 567, 573; *People ex rel. Devery* v. *Coler*, 173 N. Y. 103; *Mayor, etc., of N. Y.* v. *Tenth National Bank*, 111 N. Y. 446.)

By the Mortgage Tax Law (*People ex rel. Eisman* v. *Ronner*, 185 N. Y. 285) the assessment of mortgages was

taken from the local authorities and a flat rate fixed by the state, one-half of the moneys going to the state and one-half to the locality. The assessors no longer had any judicial discretion in the assessment of mortgages. All the duties and powers, however, of the assessors were left intact except as to this species of property. The legislature, by section 4 of the Tax Law, has created a list of exemptions from general taxation which so far as I can discover have never been questioned as illegal because in violation of article X, section 2. In the franchise tax case (*People ex rel. Met. St. Ry. Co.* v. *State Bd. Tax Commissioners*, 174 N. Y. 417) it is recognized by this court that certain conditions or nature of property which results in its escape from taxation may authorize the legislature to provide means and methods for its assessment.

In this case of the bond investment tax, a large amount of property could not be reached for assessment by the local authorities. As above stated, there was no means under the law to determine who held such securities and to what amount. The estates passing through the Surrogates' Courts bore witness to the inability of the existing tax system to equalize the burdens and to reach all property.

To remedy this condition, the legislature passed article XV of the Tax Law which permitted a flat rate of tax upon such investment securities as might otherwise go untaxed; and, with the intent, no doubt, of inducing bondholders to make known their holdings and to submit to this tax, it exempted such property from the inequality and irregularities of local assessment. This was an attempt to reach a class of property which was not bearing its proportionate part of governmental expenses, to make just the tax laws and to meet a situation which for a long time had been apparent to every one familiar with the subject and which was quite difficult to regulate. The nature of the holdings made the local assessments many times unequal and unjust, often bearing heavier

upon a small owner than upon one possessed of large amounts unknown to the assessors.

The withdrawal of property by exemption from local assessment may be so arbitrary or so extensive as to interfere with local self-government and with the principles of home rule. Such instances would clearly be unconstitutional.

The tax on investments, however (Article XV of the Tax Law), is not, in our opinion, an evasion or an attempt to evade the home-rule provisions of the Constitution, was not passed with the intention of interfering with the local authorities in their taxing powers and is not a substantial change in the duties of assessors.

As I stated in the beginning, the facts of this controversy are very simple and free from complication. The testator left hardly any debts, and securities within the Investment Tax Law which had not been subjected to any tax by local or state authorities. The circumstances were easily ascertainable and are not disputed. No difficulty has arisen in ascertaining and fixing the amount of the tax.

We treat this case, therefore, as it is presented without trying to devise instances where the law might violate fundamental principles. We cannot now see how it is unconstitutional. Time is more fecund than the mind and instances may arise hereafter which may present other and further questions regarding this law. Experience in application may furnish information which we do not now possess, and as to such questions we reserve the right to consider them as and when they arise.

Every presumption is in favor of the constitutionality of an act of the legislature and, if the Constitution and the act can be reasonably construed so as to enable the latter to stand, it is the duty of the courts to give them that construction. (*People ex rel. Met. St. Ry. Co.* v. *Tax Commissioners*, 174 N. Y. 434, 437.)

It is said that we must treat the Investment Tax Law

as though it were a compulsory tax upon the face value of bonds or the actual value without any opportunity to be heard as to the amount assessed. The tax on investments is not compulsory but optional. An owner is not compelled to submit to a state tax. He may register his bonds with the state comptroller and pay a certain amount according to face value and thus free the securities from local assessment. If he does not choose to do this he can submit to local assessment which is according to *actual value with full opportunity to be heard.* How can it be claimed that article XV of the Tax Law is compulsory or upon what theory can an owner say that he was forced to pay the state tax when he does so voluntarily in order to escape a greater tax *according to actual value?* We are seeking to force upon an owner a situation which he neither welcomes nor has requested. The tax under the investment law has been in operation since 1911 and millions of dollars have been paid to the state under its reasonable regulations. It has never yet been directly attacked.

When we pass upon the constitutionality of article XV, known as the tax on investments, we cannot read into it any other law, nor hold it unconstitutional because of the provisions of article X, providing for tax on transfers. The two laws are separate and distinct and governed by entirely different principles. Leaving out of consideration entirely section 221-b, let us determine first whether or not the tax on investments is illegal. We have to construe it as compulsory in order to make it illegal. There is nothing whatever in the law itself that compels submission to a state tax. It is entirely voluntary. The compulsion is said to be in section 221-b providing for a tax upon property passing at death. As heretofore stated by me in this opinion the state is free to place an inheritance tax upon any property passing by death to others. Having placed such a tax upon the actual value of bonds which have paid neither a local

assessment nor a state tax (which is optional and, therefore, legal), there is no ground for holding such inheritance tax unconstitutional. The selection of such property for inheritance tax is within the powers of the legislature.

To say that a man is compelled to pay a state tax in order to avoid this inheritance tax when he could pay the ordinary local assessment upon the actual value of his holdings and achieve the same end is carrying the constitutional protection to an unreasonable extent.

What is said about the violation of the " Home-Rule " provision is equally applicable to the Mortgage Tax Law and would render article XI (tax on mortgages) also unconstitutional in spite of *People ex rel. Eisman* v. *Ronner* (185 N. Y. 285). The tax here provided is a tax of fifty cents for each one hundred dollars on the *principal* or *obligation secured*, half of which goes to the state. Mortgages are not otherwise taxable.

We, therefore, conclude that the estate of Charles W. Watson, deceased, must be assessed under section 221-b of the Tax Law, upon that amount of personalty coming within the investment law which was not assessed by the local authorities or over and above the amount assessed and which did not pay any tax to the state.

The order should be reversed, with costs in all courts, and matter remitted to the Surrogate's Court for the entry of a decree in accordance with these directions.

CUDDEBACK and HOGAN, JJ., concur, and CHASE, J., concurs in result; HISCOCK, Ch. J., COLLIN and McLAUGH-LIN, JJ., dissent.

Order reversed, etc.