In the Matter of the Transfer Tax upon the Estate of Louisa S. Cole, Deceased.*

State Tax Commission, Appellant; Mary E. Cole and Another, as Executrices, etc., of Louisa S. Cole, Deceased, and Another, Respondents.

First Department, December 20, 1932.

*Seth T. Cole* of counsel [*William Dale O'Brien* with him on the brief; *Edgar Hirschberg*, attorney], for the appellant.

*Joseph F. McCloy* of counsel [*Leo Brady* with him on the brief; *Merrill, Rogers, Gifford & Woody*, attorneys], for the respondents.

Martin, J. The testatrix, Louisa S. Cole, died on January 24, 1929, a resident of New York county, leaving a last will and testament, which was duly admitted to probate, and on April 17, 1929, letters testamentary were issued to Mary E. Cole, of 25 Middletown avenue, Atlantic Highlands, N. J., and to Ethel M. Cole of 329 West Fiftieth street, New York city, as executrices.

A transfer tax appraiser was appointed as provided by section 229 of the Tax Law, to whom Ethel M. Cole made a transfer tax return. The appraiser made his report to the Surrogate's Court on June 16, 1930, showing that the decedent died seized of real estate situated in the State of New York valued at $41,800 and possessed of mortgages, notes and accounts valued at $19,854.15, a total of $61,654.15. The report further showed that for the purpose of

---

* Revg. 142 Misc. 18.

computing the transfer tax, deductions aggregating $4,856.37 for funeral and administration expenses, debts and commissions were allowable, leaving the net estate subject to tax at $56,797.78. By her will the decedent bequeathed to her sister-in-law, the said Mary E. Cole, the sum of $5,000, and the remainder of her estate she devised and bequeathed to her two nieces, Ethel M. Cole and Dorothy M. Cole, to be divided between them in equal shares.

Based upon the report of the appraiser, the Surrogate's Court on June 19, 1930, made a *pro forma* order assessing the transfer tax as follows: Mary E. Cole, taxable amount, $5,000; tax assessed, $250; Ethel M. Cole, taxable amount, $25,898.89; tax assessed, $1,304.03; Dorothy M. Cole, taxable amount, $25,898.89; tax assessed, $1,304.03.

The tax against Ethel M. Cole and Dorothy M. Cole was assessed at the graduated rates specified in subdivision 3 of section 221-a of the Tax Law, that is to say, in each case $25,000 was taxed at the rate of five per cent, and the remaining $898.89 was taxed at the rate of six per cent.

An appeal was taken to the Surrogate's Court from the said *pro forma* taxing order on the ground that the surrogate was without jurisdiction to fix and assess any tax whatsoever upon the transfer of the real property owned by the decedent at the time of her death for the reason that the provisions of the Tax Law in regard to taxable transfer of real property were wholly void and in violation of the provisions of the Constitutions of the State of New York and the United States, it being alleged that articles 10 and 10-A of the Tax Law, providing for a tax upon the transfer of real property belonging to residents of the State at a rate in excess of the rate provided for a tax upon the transfer of real property belonging to non-residents of the State of New York, constituted an illegal and unconstitutional classification between resident and non-resident decedents.

The surrogate granted the appeal and held the taxing act to be unconstitutional; that there could not be a separate classification for resident and non-resident estates. The specific ground upon which the act was held unconstitutional was that it discriminated against citizens of the State of New York.

The respondents here, who were the appellants in the Surrogate's Court, have apparently abandoned several of the points there urged, and with reference to the constitutional objections, appear to rely solely upon the fact that article 10 of the Tax Law is void with respect to devises in the case at bar, in that the tax upon transfers of real property belonging to residents of the State of New York is at a higher rate than that provided for a tax upon

the transfer of real property belonging to non-residents of the State. Although the notice of appeal in the Surrogate's Court alleged violations of sections 1 and 6 of article 1 of the Constitution of the State of New York, and of article IV, section 2, of the Fifth Amendment to the Constitution of the United States, in addition to a violation of the provisions of section 1 of the Fourteenth Amendment of the Constitution of the United States, the appellants there confined their arguments to the provisions of the Fourteenth Amendment, and the question at issue in this court is whether or not the statute offends against that amendment.

The interesting history of this subject outlined by many decisions shows that the Fourteenth Amendment to the Constitution in no wise restricts the State from imposing a fair tax on residents thereof.

Mr. Justice HOLMES in *New York Trust Co.* v. *Eisner* (256 U. S. 345, 349) very tersely said: " Upon this point a page of history is worth a volume of logic."

An excellent discussion of this entire subject is to be found in *Bell's Gap R. R. Co.* v. *Pennsylvania* (134 U. S. 232), a leading case on the subject of classification of taxes, where it was said: " The provision in the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the State Legislature, or the people of the State in framing their Constitution. But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject that would include all cases. They must be decided as they arise. We think that we are safe in saying that the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation. If that were its proper construction, it would not only supersede all those constitutional provisions and

laws of some of the States whose object is to secure equality of taxation, and which are usually accompanied with qualifications deemed material, but it would render nugatory those discriminations which the best interests of society require; which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and vice; and which every State, in one form or another, deems it expedient to adopt."

In *Watson* v. *State Comptroller* (254 U. S. 122) the court held that any classification is permissible which has a reasonable relation to some permitted end of governmental action.

In *Matter of Watson* (226 N. Y. 384) the court held that the taxing power, both direct and through an inheritance tax, is very broad and submits to few restrictions.

In *Lawrence* v. *State Tax Commission* (286 U. S. 276; 76 L. Ed. 1102) the court held that the equal protection clause does not require the State to maintain a rigid rule of equal taxation, or to resort to close distinctions, or to maintain a precise scientific uniformity, and that possible differences in tax burdens not shown to be substantial or which are based on discriminations not shown to be arbitrary or capricious, do not fall within the constitutional prohibitions.

In *Ohio Oil Co.* v. *Conway* (281 U. S. 146) the court said: " The States, in the exercise of their taxing power, as with respect to the exertion of other powers, are subject to the requirements of the due process and the equal protection clauses of the Fourteenth Amendment, but that Amendment imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to schemes of taxation."

The law under which a tax is assessed is presumed to be constitutional and the burden is upon the respondent to establish the contrary. (*Green* v. *Frazier*, 253 U. S. 233.) Unless the classification is arbitrary, capricious or wholly unreasonable it will not be held to infringe constitutional provisions. (See *Farmers' Loan & Trust Co.* v. *Minnesota*, 280 U. S. 204.) The classification here is neither arbitrary nor unreasonable.

In *Matter of Keeney* (194 N. Y. 281), Chief Judge CULLEN said: " The right and power of governments to single out certain classes of objects for taxation, leaving other classes exempt or taxed at a different rate, or in a different manner, is unquestionable."

It seems to be well settled that the State has a right to impose a tax such as here imposed. This matter was fully considered in *Matter of Davison* (137 Misc. 852; affd., 236 App. Div. 684 [2d Dept.]), where a memorandum opinion was written. In that case (at p. 864) the surrogate said: " The Federal Constitution

gives no rights to an individual citizen of a State to complain of the laws of such State on the ground that they are more favorable to citizens of another State than to himself.

" The court is, therefore, forced to the conclusion that appellants have failed to sustain the burden of establishing any single one of the three points whose demonstration is prerequisite to a declaration that the statute in question is invalid. To the contrary, the court is satisfied that a proper construction of the statute shows that the taxes imposed on the exercise of powers of appointment by residents and non-residents are identical; that even if a contrary construction were adopted the law is not discriminatory against non-residents within the constitutional inhibition; and finally, that since the contention here advanced is not that the statute discriminates against non-residents, but against residents, the appellants have no standing to raise it."

The Appellate Division, in passing upon that case, said: " We are of opinion that the question of discrimination may not be raised in the circumstances of this case, by the appellants who are residents of the State. (*Slaughter House Cases*, 16 Wall. 36; *Twining* v. *New Jersey*, 211 U. S. 78, 96; *Rosenthal* v. *New York*, 226 id. 260, 266; *LaTourette* v. *McMaster*, 248 id. 465, 469; *Prudential Ins. Co.* v. *Cheek*, 259 id. 530, 539.) We are also of opinion that the statute* complained of does not illegally or unconstitutionally discriminate between residents and non-residents. (*Gen. Amer. Tank Car Corp.* v. *Day*, 270 U. S. 367, 373; *Travellers' Ins. Co.* v. *Connecticut*, 185 id. 364; *Board of Education* v. *Illinois*, 203 id. 553; *Beers* v. *Glynn*, 211 id. 477, 484; *Maxwell* v. *Bugbee*, 250 id. 525, 541, 542.) "

We are of the opinion, therefore, that it was error to hold that article 10-A of the Tax Law was unconstitutional or that it unlawfully discriminated against citizens of the State of New York.

The order appealed from should be reversed, with costs to the appellant, and the *pro forma* taxing order reinstated.

FINCH, P. J., MERRELL, SHERMAN and TOWNLEY, JJ., concur.

Order reversed, with costs to the appellant, and the *pro forma* order reinstated.

---

* See Tax Law, § 220, subd. 4, as amd. by Laws of 1926, chap. 357, and Laws of 1928, chap. 330.— [REP.